[No. F051032. Fifth Dist. Mar. 28, 2007.]

In re S.W. et al., Persons Coming Under the Juvenile Court Law.
MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff
and Respondent, v.
KRISTINA W., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

___

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion parts II, III and IV.

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

David A. Prentice, County Counsel, and Miranda P. Neal, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

OPINION

**VARTABEDIAN, Acting P. J.**—Kristina W. appeals from the order terminating her parental rights to her two daughters, S. (born Nov. 1999) and K. (born May 2001). She claims the juvenile court did not have subject matter jurisdiction to terminate her parental rights. If the court did have jurisdiction, then she argues substantial evidence did not support the finding that S. and K. were adoptable, the court erred in terminating parental rights without receiving information from S. and K. concerning their feelings about the proposed adoption, and Kristina's regular visitation demonstrated a substantial benefit to S. and K. precluding an order terminating parental rights. We disagree with each of her contentions and affirm the judgment, publishing our discussion on subject matter jurisdiction.

## FACTS AND PROCEEDINGS

On November 15, 2004, a Madera police officer was dispatched to a report of two children living in an unsafe environment. The officer contacted the owner of the home, Julia V. Julia stated that Kristina slept in a van parked on the curb in front of her house with Julia's son, Sam V. The van was not in working order and was used for sleeping. The van had no license plates and the registration had been expired for over six months.

Julia said that Sam, Kristina and the children had arrived at her home several months before. The children slept in the house, while Kristina and Sam "stayed and lived out of the van." Sam had recently been picked up on a parole violation. Kristina remained in the van while Sam was in prison for his parole violation. Julia bought food and clothes for the children. Julia allowed the children to sleep in her house. She was sure that Sam and Kristina were using illegal drugs.

Sam's sister, Pearl, said that Kristina and Sam moved into the van in front of the house. Neither of them contributed to anything needed or used by the children. Pearl reported that Sam beat Kristina, but she would not leave him even though she had had plenty of opportunities to do so.

The officer contacted Sam. He was evasive about the children and about their mother, Kristina. He left.

Kristina arrived home shortly thereafter. Kristina told the officer that she lived in the van with Sam because she did not have money for anything else. She admitted that she was currently using heroin and had used the previous night. She said her children slept in the house and were allowed to bathe and eat in the house. She currently had an application in to Madera County for welfare so she could provide for her children. She stated that she had tried to leave Sam but he beat her and she was afraid to leave him.

When asked by the responding social worker about prior child welfare history, Kristina reported that she was receiving voluntary family maintenance services through social services in Nebraska.

Kristina reported that she and Sam had been living in Nebraska, but Sam had to return to California as a parolee at large. She traveled in her van with her children and joined Sam in California.[1]

Kristina was asked to provide personal items for the children before the van was towed. The van was in deplorable condition. It was filthy and littered with soiled clothing and used food and beverage containers. A strong stench of urine emanated from the van. There were no beds, bathroom or kitchen in the van.

The Madera County Department of Social Services (the department) took the children into protective custody and placed them in foster care. The juvenile court ordered them detained pursuant to a dependency petition and adjudged them dependents of the court. (Welf. & Inst. Code, § 300, subd. (b).) The children have different fathers. Kristina did not know where the fathers were. The department conducted due diligence searches for the fathers but could not locate them.

In the report prepared for the detention hearing, the social worker stated that she had contacted the Nebraska social worker, who confirmed that Kristina had a substantiated referral dated September 9, 2004, and has had other referrals regarding neglect, drug use, evictions and domestic violence.

A report was prepared for the disposition hearing. Kristina reported to the social worker that she was born in Nebraska and that is where her family lives. She met Sam four years earlier and they began a relationship. Sam was

---

[1] We note that Kristina's report that she arrived in California after Sam arrived differs from Julia's report that Kristina, Sam, and the two girls arrived together.

physically abusive to her but treated her children "real good." Kristina expressed her desire to the social worker to move to Nebraska or else she would be unable to keep herself from reuniting with Sam after he was released from prison in a couple of weeks.

Kristina received from her father a bus ticket to Nebraska for January 8, 2005. Kristina had warrants out for her arrest in Nebraska and she wished to return to serve her time so she would be available to care for her children. Kristina stated that she felt that being in Nebraska with her family's support would help her to gain and maintain sobriety so she could provide for her children.

Kristina disclosed to the social worker that she left Nebraska because child welfare services in Nebraska had conducted a hair follicle test and she knew the test result would be dirty. She was afraid they would take her children away so she packed up the van and drove to California to join Sam.

On January 7, 2005, the court conducted an uncontested dispositional hearing. The court assumed dependency jurisdiction and ordered Kristina to complete programs in parenting and domestic violence, complete a psychological evaluation and a substance abuse assessment, follow any recommended treatment and submit to random drug testing.

The day after the disposition hearing, Kristina traveled to Nebraska. She was incarcerated from January 19, 2005, to February 24, 2005. During her time in Nebraska her compliance with her case plan was minimal. She returned to California in April 2005 and visited with her children while she was here.

The department recommended that services be continued for an additional six months. The department recommended against placing the children with Kristina's brother and sister-in-law. The court adopted the department's recommendation and ordered another six months of services.

At the 12-month status review the department recommended that family reunification services be terminated and the matter be set for permanency planning. The department noted that Kristina had made some progress in her case plan, but had only begun her substance abuse counseling.

Kristina contested the department's recommendation at the February 3, 2006 12-month review hearing. The court found it would be detrimental to return the children to Kristina's custody. It also found that she was provided reasonable services but failed to make significant progress in resolving the problems requiring the children's removal. The court terminated Kristina's reunification services and set a Welfare and Institutions Code section 366.26 hearing.

Kristina filed a petition seeking writ review from the order terminating reunification services and the setting of a Welfare and Institutions Code section 366.26 hearing. We denied her petition on May 8, 2006, in *Kristina W. v. Superior Court* (May 8, 2006, F049843) (nonpub. opn.).

A report was prepared for the permanency planning hearing. S. was described as a six-and-a-half-year-old child with developmental delays. It is suspected that she suffers from the same genetic condition Kristina suffers from, Noonan's Syndrome. She is significantly behind her peers in school. Although S. is behind her peers, she has shown steady progress and her classroom behavior is excellent. She is friendly and helpful in class. She does not appear to be suffering from any form of childhood mental illness and presents as a polite, well-adjusted child. S. has a urinary problem that will require routine surgery.

K. was described as a physically healthy five year old. She is developmentally on target. She is an intelligent and active child who is cooperative with adults and presents no behavioral problems.

Because Kristina moved to Nebraska, she had not maintained regular face-to-face visitation with the children, but she did maintain regular contact by telephone. The children recognized Kristina as their mother, but the parent-child relationship had weakened over the past 18 months. The social worker found that the children would not be greatly harmed if the weak parent-child relationship was severed. The worker believed that the children would clearly benefit from a plan of adoption and were an adoptable sibling pair. At the time the initial report was written, the girls had attended an adoption picnic in May of 2006 and three families expressed interest in adopting them. Later in May a specific adoptive family had been selected. The adoptive family was well aware of S.'s health issues and developmental challenges.

K. and S. had a day visit with their prospective adoptive parents, followed by an overnight visit. They were placed in the foster-adopt home on June 17, 2006, and were doing well in their placement at the time the June 21, 2006 review report was written.

The contested Welfare and Institutions Code section 366.26 hearing was held on July 12, 2006. At the outset of the hearing, counsel for Kristina raised the issue of jurisdiction. She argued that Kristina had been in California only a few months, she was homeless, she did not have a bank account, and she had told the social worker that she wanted to return to Nebraska. The court disagreed and said that at the time jurisdiction was exercised everyone in this case was residing in Madera. The court and counsel continued to discuss the question of jurisdiction with the court ending the conversation by stating it could not do anything about it now. The court told counsel for Kristina that she could raise a formal motion regarding jurisdiction if she so desired.

Counsel for Kristina then argued that there was not sufficient evidence to show that the girls were adoptable. She argued that there was not a bonding study. The court found that the children were adoptable and terminated the rights of Kristina and the fathers of the girls.

## DISCUSSION

### I. Subject Matter Jurisdiction

 " 'Lack of jurisdiction' is a term used to describe situations in which a court is without authority to act. [Citation.] The Uniform Child Custody Jurisdiction and Enforcement Act (the Act) (Fam. Code, § 3400 et seq.) is the exclusive method for determining subject mater jurisdiction for custody proceedings in California, and its provisions apply to juvenile dependency proceedings. [Citations.]" (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 245 [31 Cal.Rptr.3d 697].)

 "[S]ubject matter jurisdiction either exists or does not exist at the time the action is commenced." (*Plas v. Superior Court* (1984) 155 Cal.App.3d 1008, 1015, fn. 5 [202 Cal.Rptr. 490].) A proceeding is commenced the date the action is filed. (*In re Janette H.* (1987) 196 Cal.App.3d 1421, 1429 [242 Cal.Rptr. 567].) "We are not bound by the juvenile court's findings regarding subject matter jurisdiction, but rather 'independently re-weigh the jurisdictional facts.' [Citation.]" (*In re A. C.* (2005) 130 Cal.App.4th 854, 860 [30 Cal.Rptr.3d 431].) Subject matter jurisdiction "cannot be conferred by stipulation, consent, waiver, or estoppel [citations]." (*Ibid.*)

Kristina contends that she and her daughters are Nebraskans unjustly trapped in the California dependency system. She argues that California was

neither her home state nor the home state of the children at the commencement of the proceedings. Appellate counsel for Kristina argues that they were merely visiting California when the children were detained. Because they were only visiting, Nebraska is their home state under Family Code sections 3402, subdivision (g) and 3421, subdivision (a)(1).[2] At most, Kristina argues, California had only temporary emergency jurisdiction under section 3424. In addition, Kristina contends the trial court abused its discretion by not staying the proceedings on grounds of inconvenient forum.

Kristina argues that Nebraska is the state with subject matter jurisdiction under section 3421, subdivision (a)(1). It provides: "Except as otherwise provided in Section 3424 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true: [¶] (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state."

For purposes of the act, " '[h]ome state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

Sam's mother said that Kristina and the children had been at her home for several months. Kristina and Sam "lived" out of the van. Even though Sam had been in prison for a parole violation while Kristina was in California, she continued to live in the van. Sam's sister said that Kristina and Sam "moved into" the van. Kristina has not left Sam even though she has had opportunities to do so. Kristina told the responding officer that she "lives" in the van. She has applied for welfare in Madera County. Kristina left Nebraska to come to California with Sam because he had to return to California. There was nothing in this evidence that suggested that Kristina was on a temporary visit of some sort. She came to California to be with Sam. She remained in California, even though she had opportunities to leave. She sought welfare in California. All of this establishes that Kristina and the children were living in California. The fact that Kristina chose to live in a van rather than a typical residence demonstrates her unstable and unsuitable lifestyle; it does not demonstrate that her residence was somewhere other than in California at the time the proceedings were commenced.

---

[2] Unless otherwise noted, all future code references are to the Family Code.

■ Because this evidence established that Kristina and the children were living in California, as opposed to visiting, at the time of the commencement of the proceeding, Nebraska cannot be the "home state" under section 3402, subdivision (g) and thus jurisdiction was not established in Nebraska under section 3421, subdivision (a)(1). Kristina's argument that the trial court did not have subject matter jurisdiction because Nebraska was her home state at the commencement of the proceeding fails.

Kristina argues that jurisdiction in California cannot be established under the other provisions of section 3421 because there is no evidence any Nebraska court ever declined jurisdiction over the mother or the minors. Because the facts demonstrate that Nebraska is not the home state of Kristina and her children, the provisions regarding when a home state has declined to exercise jurisdiction have no application.

■ Although Nebraska is not Kristina's home state, California also does not meet the definition of home state as defined in section 3402, subdivision (g) because the evidence does not demonstrate that Kristina and her children resided in California for six consecutive months. When there is no state that meets the definition of home state, jurisdiction may be established under section 3421, subdivision (a)(2).

A court of this state has jurisdiction to make a child custody determination when: "(a)(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true:

"(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

"(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (§ 3421.)

Kristina and her children have a significant connection to this state other than mere physical presence because they were residing in this state at the time the proceedings were commenced. In addition, there is substantial evidence in this state concerning the children's care, protection, training, and personal relationships. Sam's mother let the children eat, sleep, and bathe in her house. She provided them with food and clothes. At the time the children were detained they were in the house with Sam's mother. In addition, local child welfare workers and local police observed the living conditions in the van, which served as the home for Kristina, Sam and her children. Kristina

had been in a relationship with Sam for several years. The children were young at the time of their detention and their closest personal relationship was with their mother, who resided in California. The children were not in school at the time of their detention.

Subject matter jurisdiction existed in California under section 3421, subdivision (a)(2) at the time this action was commenced. Because jurisdiction was properly established under section 3421, we need not discuss whether California would have had continuing subject matter jurisdiction under the emergency provision of section 3424, subdivision (b).

Because this argument fails, we need not discuss whether California would have had continuing subject matter jurisdiction under the emergency provisions of section 3424, subdivision (b).

Kristina goes on to argue that even if jurisdiction were proper in this case, the court should have declined to exercise that jurisdiction because California was an inconvenient forum and Nebraska was the more appropriate forum. Kristina claims that all of the factors utilized to determine the correct forum weighed heavily in favor of Nebraska and it was an abuse of discretion to ignore these factors. Kristina makes this argument even though the issue of inconvenient forum was not raised below.

Section 3427, subdivision (a) provides: "A court of this state that has jurisdiction under this part to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court."

The issue of inconvenient forum was not raised by motion of a party, on the court's own motion, or on the request of another court. It thus was not properly raised in the juvenile court and is not an issue before this court. Kristina's reliance on *Clark v. Superior Court* (1977) 73 Cal.App.3d 298 [140 Cal.Rptr. 709] is misplaced because in *Clark* the mother raised the issue of an inconvenient forum in the lower court.

### II.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1501.

## DISPOSITION.

The judgment is affirmed.

Cornell, J., and Gomes, J., concurred.

A petition for a rehearing was denied April 18, 2007, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 13, 2007, S152369.