Filed 12/9/15

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| BARRY SCHNEER, | |
| Plaintiff and Appellant, | E060040 |
| v. | (Super.Ct.No. FAMMS1300368) |
| ALICE LLAURADO, | OPINION |
| Defendant and Respondent. | |


APPEAL from the Superior Court of San Bernardino County.  Frank Gafkowski, Jr., Judge.  (Retired judge of the former L.A. Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed.

Law Office of Herb Fox and Herb Fox for Plaintiff and Appellant.

Patrick McCrary for Defendant and Respondent.


1

Plaintiff and appellant Barry Schneer (father) appeals from an order of the family court finding California lacks jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code,[1] § 3400 et seq.) to make an initial child custody determination regarding his daughter (the child). Father contends the family court erred by ruling California was not the child's home state for purposes of the UCCJEA because the child did not reside in California during the six-month period immediately before father filed his child custody petition and, instead, argues California is the child's home state because the child resided in California for six continuous months and was taken to Florida by her mother, defendant and respondent Alice Llaurado (mother), less than six months before father filed his petition. We agree with father's interpretation of the UCCJEA and reverse the family court's order.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Father filed his child custody petition on June 24, 2013. In support of the petition, father declared the child was born in June 2011 in Miami, Florida, and that the child and mother resided with father in Twentynine Palms, California, from April 2012 onward. In an attachment to a request for an emergency decree, father alleged mother took the child to Florida to visit the child's grandparents "under [the] presumption of her return

---

[1] Unless otherwise indicated, all additional statutory references are to the Family Code.

2

following a short visit," but mother and the child had been in Florida for more than three months "with no date of return."

In her response and in a motion to quash and dismiss the petition, mother alleged the child lived in Miami since her birth and never resided in California. Mother declared she and the child visited California several times between August 2012 and March 2013, but she never stayed more than a few weeks at a time. Mother denied having any intent to relocate to California, and denied residing in any state other than Florida.

In her points and authorities in support of the motion to quash, mother argued neither California nor Florida was the child's home state under the UCCJEA because the child did not live in either state for six continuous months immediately before father filed his petition. Instead, mother argued Florida had jurisdiction over the dispute because she and the child have a "significant connection" to Florida. However, because neither parent had yet to file a child custody proceeding in Florida, the courts of that state had not declined to exercise jurisdiction over the dispute. Therefore, mother asked the family court to dismiss the action so one or the other parent could file a child custody action in Florida.

Father opposed the motion to quash, contending mother knowingly made false statements regarding the child's residence and was estopped from denying her residence in California based on sworn statements mother made in connection with a petition for child support she filed in the Riverside Superior Court regarding her son from another relationship.

At an evidentiary hearing, mother testified she and father both lived in Florida when they met and they continued to live in Miami after the child's June 2011 birth. Mother could not recall when father moved to California, but she testified she and the child continued to live in Miami. Mother and the child traveled to California to visit father and, at father's request, they stayed in California for an extended visit from late August 2012 until early March 2013. Mother registered her son in a local school the day after she arrived in California. However, during the extended visit, mother returned to Florida "[a]t least once a month" for doctor's appointments, and for most of those trips to Florida she took the child with her. Mother testified she worked in Florida as a nurse and visited a physician for a back injury up to the time she and the child visited father in California, and she testified she and the child did not live with father in California before August 2012.

Mother testified she returned to Florida in March 2013 because she wanted to resume her life there, and she had stayed in California longer than she originally planned. Mother withdrew her son from school in California and enrolled him in school in Florida. Thereafter, father visited the child in Florida at least once a month and would stay for a week or so.

Gennaro Pana, a business associate of father, testified that in December 2011, father and mother attended a Christmas party at Pana's New Jersey home. During the party, both father and mother told Pana they decided to move to Twentynine Palms to help grow the business. Pana testified that from late December 2011 through January 2012, both father and mother searched for a home in Twentynine Palms. Pana visited

4

with father and mother at their Twentynine Palms residence various times starting mid-April or early March 2012, and the child was there each time Pana visited. On cross-examination, Pana testified mother told him she did not like living in Twentynine Palms, but Pana denied mother told him she did not want to move to California.

Nora Llaurado, the child's maternal grandmother, testified she lives in Miami, Florida, and in January and April 2012 the child resided in her home. She testified mother and the child traveled with father to California at the end August 2012, and that on the day they left father told her not to worry because they were "just going for a couple months."

David Llaurado, the child's paternal grandfather, testified mother and the child lived in his home from January through August 2012. He could not recall when mother and the child traveled to California, but he testified they returned in March 2013 and have since lived in his home.

Jose Sarria, an employee of father's business, testified father, mother, and the child moved into their Twentynine Palms residence in April 2012. Sarria testified he drove mother's son to and from school every day, and he would regularly see mother and the child in Twentynine Palms.

James Koenig, another employee of father's business, testified that in early January 2012, the company found housing for father's family in Twentynine Palms. Koenig testified father, mother, and the child moved into the home in late March or April 2012. Koenig visited the home three or four times a week throughout 2012 and into early

2013. Mother was usually at the home during these visits, except for a few times when mother had traveled to Florida.

Father testified he decided to move to Twentynine Palms in December 2011. He and mother discussed and then agreed on moving to California to take advantage of a business opportunity, and they announced their decision at Pana's Christmas party. Father, mother, and the child moved to Twentynine Palms in April 2012. Father testified that from April to August 2012, mother traveled to Florida every four or five weeks for doctor's appointments and would stay there for a couple days at a time. During that same period, father, mother, and the child traveled together to Miami. Father testified that mother had her mail forwarded from Florida to Twentynine Palms and transferred the child's medical records to a Twentynine Palms pediatrician.

Father also testified that in March 2013 mother traveled to Miami for surgery, and at the time he believed she would be returning once the surgeon released her. Mother left her clothing and personal property at the Twentynine Palms home. She did not tell father she was moving back to Florida.

After the close of testimony, the family court asked the attorneys to address the six consecutive months before father filed his petition in June 2013. To assist the attorneys in narrowing their arguments, the court stated it was satisfied father and mother moved to California with the expectation of having a future here, and that the couple lived in California with the child through March 2013.

Mother's attorney argued the family court could not find California to be the child's home state unless it found the child lived here continuously for six months

6

immediately before father filed his petition in June 2013. Counsel argued California was not the child's home state because mother and the child did not reside full time in California until October 2012 and moved back to Florida in March 2013. Moreover, counsel argued Florida was not the child's home state either because mother and the child moved back to Florida only four months before father filed his petition. Instead, counsel argued Florida had jurisdiction because mother and the child had a significant connection with Florida.

Father's attorney argued California had home state jurisdiction under section 3421, subdivision (a)(1). Although mother and the child moved back to Florida almost four months before father filed his petition, counsel argued the statute was satisfied because the child resided in California for six continuous months less than six months before father filed the petition, and father continued to reside in California. According to counsel, "this would have to be true of so many of these cases, your Honor, involving situations where one parent leaves with the child. And if that parent leaves with the child for a month or two months before somebody can file papers and get into court, then we would never have a home-state finding." Counsel argued the facts clearly showed that mother and the child resided in California at least from August 2012 through March 2013, and that the court had to find California had home state jurisdiction based on the plain language of the statute.

The family court concluded the six-month period for home state jurisdiction "is measured backward from the date of the filing of the petition." The court found the child resided in California until March 2013, but that she did not reside here for six consecutive

months immediately before father filed his petition. The court rejected the argument that home state jurisdiction could be based on the fact the child resided in California for six months and father remained in California after mother and the child moved back to Florida. "It is a misrepresentation to try to qualify as [a] home state to try and piggyback to the previous August for that purpose." The family court therefore found California "does not have jurisdiction" over the dispute. The family court directed mother's attorney to "prepare the findings and order," and in its September 17, 2013 minute order the court denied father's request for a statement of decision.

Father filed a premature notice of appeal.

On May 1, 2014, the family court entered written orders prepared by mother's attorney finding the court "has no jurisdiction" over the child custody dispute and dismissing the case "in its entire[t]y for lack of jurisdiction." During oral argument before this court, mother's attorney argued the appeal is limited to the September 17, 2013 minute order, and that we should not consider the written orders filed on May 1, 2014. Because the family court in this case directed mother's counsel to prepare a formal written order, an appeal may not lie from the minute order. (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 457-458; *In re Marriage of Wood* (1983) 141 Cal.App.3d 671, 677.) We deem father's premature notice of appeal to have been timely filed after the entry of judgment on May 1, 2014. (Cal. Rules of Court, rule 8.104(d).) Therefore, the May 1, 2014 orders are properly before us.

8

## II.

## DISCUSSION

## A.

## Standard of Review

Citing *In re A.C.* (2005) 130 Cal.App.4th 854, father contends the family court's finding under the UCCJEA that California lacks jurisdiction over this child custody dispute is a question of law, and we may independently reweigh the jurisdictional facts in the appellate record. In her brief, mother discusses generally applicable standards of review in family law cases, but ultimately she contends jurisdiction under the UCCJEA is a question of law reviewed de novo and, therefore, the family court's factual findings are immaterial. We reject the suggestion that we may disregard the trial court's factual findings and reweigh jurisdictional facts and, instead, we conclude the appropriate standard of review in this case, where the evidence was disputed, is the deferential substantial evidence test.

In *In re A.C.*, *supra*, 130 Cal.App.4th 854, the court stated, "We are not bound by the juvenile court's findings regarding subject matter jurisdiction, but rather 'independently reweigh the jurisdictional facts.' [Citation.]" (*Id.* at p. 860.) A number of other appellate courts have likewise stated an appellate court reviewing a jurisdictional finding under the UCCJEA (or under its predecessor, the Uniform Child Custody

9

Jurisdiction Act (UCCJA)) may reweigh jurisdictional facts,[2] but none of those cases provided any analysis in support of such a unique standard of review. *In re A.C.* and the line of cases cited in the margin, *ante*, footnote 2, trace their origin directly to the decision in *In re Marriage of Fox* (1986) 180 Cal.App.3d 862 (*Fox*).[3]

In *Fox*, *supra*, 180 Cal.App.3d 862, the family court declined to exercise jurisdiction pursuant to the UCCJA, finding Louisiana had jurisdiction over the child custody dispute. (*Id*. at p. 869.) When discussing the appropriate standard of review, the *Fox* court began by stating the family court's jurisdictional finding under the UCCJA, and its findings about a sister-state's jurisdiction for purposes of enforcing out-of-state custody decrees, are reviewed for substantial evidence. (*Ibid*.) However, the court stated

---

[2] *Ocegueda v. Perreira* (2015) 232 Cal.App.4th 1079, 1084; *In re A.M.* (2014) 224 Cal.App.4th 593, 598; *In re Nelson B.* (2013) 215 Cal.App.4th 1121, 1123; *In re Marriage of Fernandez-Abin* (2011) 191 Cal.App.4th 1015, 1042; *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 492; *In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1348; *In re Jorge G.* (2008) 164 Cal.App.4th 125, 131-132; *In re Angel L.* (2008) 159 Cal.App.4th 1127, 1136; *In re Marriage of Saheen* (2007) 153 Cal.App.4th 371, 376; *In re S.W.* (2007) 148 Cal.App.4th 1501, 1508; *In re Marriage of Newsome* (1998) 68 Cal.App.4th 949, 956; *Brossoit v. Brossoit* (1995) 31 Cal.App.4th 361, 367; *In re Marriage of Zierenberg* (1992) 11 Cal.App.4th 1436, 1441; *Adoption of Zachariah K.* (1992) 6 Cal.App.4th 1025, 1034; and *In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 502.

This court has not had occasion to address the appropriate standard of review in appeals from a jurisdictional finding under the UCCJEA or under its predecessor the UCCJA.

[3] For example, *In re Nelson B.*, *supra*, 215 Cal.App.4th at page 1128 cited *In re Jaheim B.*, *supra*, 169 Cal.App.4th at page 1348, which cited *In re A.C.*, *supra*, 130 Cal.App.4th at page 860, which quoted *Adoption of Zachariah K.*, *supra*, 6 Cal.App.4th at page 1034, which cited *In re Marriage of Arnold & Cully*, *supra*, 222 Cal.App.3d at page 502, which in turn cited *Fox*, *supra*, 180 Cal.App.3d at page 870.

a family court's finding of no jurisdiction based on uncontroverted evidence is reviewed for abuse of discretion, but a finding of no jurisdiction based on resolution of conflicting evidence is reviewed for substantial evidence. (*Id.* at pp. 869-870.) Next, the court stated that, where two states have concurrent jurisdiction, and the family court declines to exercise jurisdiction based on forum non conveniens or because one of the parents unilaterally removed the child from the other forum, the appellate court applies the abuse of discretion standard. (*Id.* at p. 870.) It is the *Fox* court's final statement regarding the standard of review on which the line of cases cited above is based: "Since an adjudication under U.C.C.J.A. requires subject-matter jurisdiction, the Court of Appeal is not bound by the trial court's findings *and may independently reweigh the jurisdictional facts.*" (*Ibid.*, citing *Clark v. Superior Court* (1977) 73 Cal.App.3d 298 (*Clark*), italics added.) There are three problems with this quote, which none of the cases cited above appear to have noticed.

First, the decision in *Clark*, *supra*, 73 Cal.App.3d 298—the sole authority on which *Fox* relied for the rule that an appellate court may reweigh jurisdictional facts— does not actually support the proposition for which it was cited.[4] In *Clark*, the appellate

---

[4] The first clue that *Clark*, *supra*, 73 Cal.App.3d 298, does not support the proposition for which it was cited is the *Fox* court used the introductory signal "see" and provided no pinpoint citation for the page or pages on which *Clark* allegedly held or implied an appellate court may reweigh jurisdictional facts. (*Fox*, *supra*, 180 Cal.App.3d at p. 870; Cal. Style Manual (4th ed. 2000) § 1:4, pp. 9-10 [instructing that introductory signal "see" should be used for "weaker" citations, such as "cases that only indirectly support the text, citations to supporting dicta, and citations to a concurring or dissenting opinion"].)

11

court held—on stipulated facts—the family court *abused its discretion* by not staying a custody proceeding based on forum non conveniens when it appeared both California and Oregon had concurrent jurisdiction under the UCCJA. (*Clark*, at pp. 301, 310.) The *Clark* court said or implied nothing about reweighing jurisdictional facts.

Second, the statement in *Fox* about reweighing jurisdictional facts is nonbinding dictum because the court reversed *for lack of substantial evidence* the family court's finding that Louisiana had jurisdiction and reversed *for abuse of discretion* the family court's finding that California was an inconvenient forum to litigate the custody dispute. (*Fox*, *supra*, 180 Cal.App.3d at pp. 867, 871, 873.) As in *Clark*, *Fox* never purported to actually reweigh the evidence.

Last, the notion an appellate court may independently reweigh the trial court's findings of jurisdictional facts runs counter to the fundamental principle that appellate courts do not reweigh facts and generally must defer to the trial court's resolution of credibility and conflicts in the evidence. (E.g., *People v. Brown* (2014) 59 Cal.4th 86, 106 ["'We do not reweigh evidence or reevaluate a witness's credibility'"]; *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531 ["Appellate courts 'do not reweigh evidence or reassess the credibility of witnesses'"]; *People v. Morton* (2003) 114 Cal.App.4th 1039, 1048 ["Long-standing precedent decrees that we are not empowered to reweigh the evidence, no matter how unpersuasive it may appear on a cold record"]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 16:203, p. 16-70 ["Unlike the trial court, which examines issues of law and fact, weighing the evidence for the purpose of determining the litigants' rights, an appellate court passes

12

*only on questions of law*; it is not a 'second trier of fact' and generally has none of the functions of a trier of fact"].)

Two published decisions more carefully cited *Fox*, *supra*, 180 Cal.App.3d 862, for the standard of review in appeals from an order finding California or another state has jurisdiction to hear a child custody dispute, without repeating *Fox*'s dictum about reweighing jurisdictional facts. "A finding that California or another state has jurisdiction under the UCCJA is reviewed for substantial evidence. (*In re Marriage of Fox* (1986) 180 Cal.App.3d 862, 869.) The same standard of review applies to a finding that California lacks jurisdiction following a resolution of conflicting evidence. (*Id*. at p. 870.)" (*Hayward v. Superior Court* (2000) 77 Cal.App.4th 949, 954 (*Hayward*); see Eisenberg at al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 8:130.3, p. 8-97, citing *Hayward*, at p. 954.) Similarly, *In re Janette H.* (1987) 196 Cal.App.3d 1421 stated, "The lower court's finding regarding Virginia's jurisdiction, for purposes of enforcing the out-of-state order in a California court, is subject to a substantial evidence standard of review." (*Id*. at p. 1427, citing *Fox*, at p. 869.)

We agree with those two decisions and with *Fox* that, when the facts are contested, a trial court's jurisdictional finding under the UCCJEA is reviewed under the deferential substantial evidence standard.[5] (*Hayward*, *supra*, 77 Cal.App.4th at p. 954; *In re Janette H.*, *supra*, 196 Cal.App.3d at p. 1427; *Fox*, *supra*, 180 Cal.App.3d at pp. 869-870.) When conducting a substantial evidence review, we must review the entire record in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the family court's findings. (*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051.) The family court's resolution of conflicts in the evidence and credibility assessments are binding on this court. (*Id*. at pp. 1051-1052.) For the reasons stated, *ante*, we decline to follow *Fox*'s oft repeated but unsupported dictum suggesting an appellate court reviewing a jurisdictional finding under the UCCJEA may independently reweigh jurisdictional facts.

---

[5] We part ways with those cases to the extent they concluded a jurisdictional ruling is reviewed for abuse of discretion when the evidence is undisputed. (*Hayward*, *supra*, 77 Cal.App.4th at p. 954; *Fox*, *supra*, 180 Cal.App.3d at p. 870.) When the facts are uncontested, the ultimate determination of jurisdiction is a question of law we review de novo. (*Vons Companies*, *Inc. v. Seabest Foods*, *Inc*. (1996) 14 Cal.4th 434, 449 ["When no conflict in the evidence exists . . . the question of [personal] jurisdiction is purely one of law and the reviewing court engages in an independent review of the record"]; *Guardianship of Ariana K*. (2004) 120 Cal.App.4th 690, 701 ["Where the evidence is not in dispute, a determination of subject matter jurisdiction is a legal question subject to de novo review"].) But even when reviewing de novo the legal determination of jurisdiction, an appellate court does not reweigh evidence.

14

Finally, as with any statute, interpretation of the UCCJEA is a question of law we review de novo. (*In re Marriage of Davis* (2015) 61 Cal.4th 846, 851; *In re R.D.* (2008) 163 Cal.App.4th 679, 684 [Fourth Dist., Div. Two].)

B.

The Family Court Erred by Finding California Is Not the Child's

Home State Under the UCCJEA

California adopted the UCCJEA effective January 1, 2000. (§ 3400 et seq.; Stats. 1999, ch. 867, § 3; *In re Christian I.* (2014) 224 Cal.App.4th 1088, 1096.) The UCCJEA is the exclusive method of determining subject matter jurisdiction in child custody cases. (§ 3421, subd. (b); *Keisha W. v. Marvin M.* (2014) 229 Cal.App.4th 581, 585-586.) Subject matter jurisdiction over a child custody dispute either exists or does not exist at the time the petition is filed, and jurisdiction under the UCCJEA may not be conferred by mere presence of the parties or by stipulation, consent, waiver, or estoppel. (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1316-1317 (*Brewer*).)

The purposes of the UCCJEA are "to avoid jurisdictional competition between states or countries, promote interstate cooperation, avoid relitigation of another state's or country's custody decisions and facilitate enforcement of another state's or country's custody decrees. [Citation.]" (*In re Gloria A.* (2013) 213 Cal.App.4th 476, 482.) "Pursuant to the UCCJEA, California courts have jurisdiction over child custody determinations only if the child's home state is California, or the child's home state does not have jurisdiction or declined jurisdiction in favor of California. (§ 3421.)" (*In re Marriage of Richardson* (2009) 179 Cal.App.4th 1240, 1243.) The UCCJEA prioritizes

15

home state jurisdiction over other bases of jurisdiction. (*Brewer*, *supra*, 218 Cal.App.4th at p. 1317; 9 pt. 1A West's U. Laws Ann. (1999) U. Child-Custody Jurisdiction and Enforcement Act, com. foll. § 201, p. 672 ["The jurisdiction of the home State has been prioritized over other jurisdictional bases"].)[6]

The family court ruled California is not the child's home state because mother took the child with her to Florida "and resided there for several months, four months, before the commencement of these proceedings," so "the child did not reside in California six consecutive months immediately before [father] commenced this action."[7] Under the family court's reasoning, California does not have home state jurisdiction to hear a custody dispute over a child who lived in California for six or more months if one parent took the child to another state, and the parent who remained in California does not immediately file a custody petition.

Read in isolation, the definition of "home state" as the state in which the child lived "for at least six consecutive months *immediately before* the commencement of a child custody proceeding" (§ 3402, subd. (g), italics added) would appear to support the

---

[6] The official commentary from the drafters of the UCCJEA is entitled to substantial weight. (*Brewer*, *supra*, 218 Cal.App.4th at p. 1318, fn. 5.)

[7] During oral argument before this court, mother's attorney suggested the family court actually ruled that California had home state jurisdiction under section 3421, subdivision (a), but nonetheless declined to exercise that jurisdiction after finding Florida was the more appropriate state in which to litigate the child custody dispute. We reject counsel's reading of the record. Although the family court did not speak with perfect clarity, there is no indication the court made a finding of inconvenient forum under section 3427, and the court unmistakably dismissed the case "for lack of jurisdiction."

16

family court's interpretation.  But the definition of home state in section 3402, subdivision (g), must be read in conjunction with the jurisdictional statute, section 3421, subdivision (a)(1).  (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 ["'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness"'"].)

Read together, sections 3402 and 3421 provide two bases for home state jurisdiction.  First, a California court has jurisdiction to make an initial determination of child custody if California is the child's home state on the date the proceeding is commenced (§ 3421, subd. (a)(1)), meaning the "child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."  (§ 3402, subd. (g).)  Second, a California court has jurisdiction if California was the child's "home state . . . within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state."  (§ 3421, subd. (a)(1).)  The family court's reading of the UCCJEA ignored the "alternative" or "extended" basis for home state jurisdiction.  (*Keisha W. v. Marvin M.*, *supra*, 229 Cal.App.4th at p. 586 ["where Minor is absent and a parent is present, section 3421, subdivision (a)(1) provides as an alternative that California was the home state within six months of commencement of the proceeding"]; 9 pt. 1A West's U. Laws Ann., *supra*, U. Child-Custody Jurisdiction and Enforcement Act, com. foll. § 201, p. 672 [explaining

17

the UCCJEA retained the "six-month extended home state jurisdiction provision" from its predecessor the UCCJA].)

In *Brewer*, *supra*, 218 Cal.App.4th 1312, the child was born in California and lived here with both parents for 14 months. (*Id*. at pp. 1314-1315.) The mother took the child with her to Illinois in June 2011. When the mother did not return, the father filed his custody petition the first week of August 2011. (*Id*. at p. 1315.) The trial court ruled California did not have home state jurisdiction "because the child had not lived in California for six continuous months immediately prior to the filing date." (*Ibid*.) The Court of Appeal disagreed, and concluded California had home state jurisdiction. "California was the child's home state within six months of the commencement of the proceeding and although the child was absent from the state, Brewer continued to live in California. At the time of the filing, Brewer's son had been out of California for no more than 72 days. (Cf. *In re Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1374 [under the provisions of the former UCCJA, Cal. was the home state of a child absent from the state for 77 days].)" (*Id*. at pp. 1317-1318.)

As in *Brewer*, *supra*, 218 Cal.App.4th 1312, we conclude California has home state jurisdiction over this case. Substantial evidence supports the family court's finding that, notwithstanding mother's frequent trips to Florida with the child,[8] the child continuously resided in California from at least August 2012 until March 2013. In other

---

[8] "[I]n determining a child's period of residence, '[a] period of temporary absence . . . is part of the period.' (§ 3402, subd. (g).)" (*Keisha W. v. Marvin M*., *supra*, 229 Cal.App.4th at p. 586, fn. 6.)

18

words, the child resided in California for at least six continuous months and mother moved her to Florida less than six months before father filed his petition in June 2013. The child's absence from California for almost four months before father filed his petition is not determinative because father continued to reside in California. Under these facts, the family court erred by finding California lacked jurisdiction under section 3421, subdivision (a)(1). Therefore, we reverse.[9]

### III.

### DISPOSITION

The jurisdictional order is reversed. Father shall recover his costs on appeal.

CERTIFIED FOR PUBLICATION

McKINSTER _____
J.

We concur:

HOLLENHORST _____
Acting P. J.

MILLER _____
J.

---

[9] Our holding is without prejudice to mother asserting on remand that California is an inconvenient forum, and that the family court should decline to exercise jurisdiction for that reason. (§ 3427.)