Filed 6/29/21  Thygesen v. Wang CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHRISTOFFER STANFORD THYGESEN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KAILIN WANG,<br><br>    Defendant and Appellant. | A158691<br><br>(City & County of San Francisco<br>Super. Ct. No. FDV-19-814465) |

In this custody dispute between Christoffer Stanford Thygesen (father) and Kailin Wang (mother), father appeals an order finding that the child's home state under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Family Code section 3400 et seq.,[1] is Utah. Father contends the court erred by reconsidering its prior determination that California is the child's home state and by failing to make the necessary findings in support of the changed determination. He also argues that the court violated his due process rights by peremptorily terminating his examination of mother and his presentation of evidence at the UCCJEA trial. Mother has filed a cross-appeal challenging the court's reentry of its prior order granting father custody of the child under the emergency jurisdiction provision of the UCCJEA. We conclude that the trial court's initial jurisdictional finding under the UCCJEA was binding on mother under section 3406 so that the court erred in considering mother's subsequent untimely objection to jurisdiction. The order must be reversed and the matter remanded for further proceedings,

_____

[1] All statutory references are to the Family Code unless otherwise noted.

1

so we do not reach father's remaining arguments nor do we address the merits of mother's cross-appeal.

## Background

Many of the facts at issue in the underlying proceedings are contested. This appeal, however, does not require this court to resolve those factual disputes. We rely only on those facts not reasonably subject to dispute.[2]

The parties' son was born in November 2018 in Utah. It is undisputed that father was residing in San Francisco, California at the time of the child's birth. Mother testified that she was residing in Utah at the time of the child's birth but paperwork completed for the birth certificate by mother states that her home address was in Los Angeles, California.

Immediately following the child's birth, mother initiated a claim with the local child support agency in Los Angeles, California, which filed a child support action against father in Los Angeles Superior Court. Subsequent testing in that proceeding established father's paternity.

Shortly after commencing the child support action in Los Angeles, mother emailed father's counsel suggesting that the parents agree to have the action proceed in San Francisco. She explained that she travels between Utah, New York, and California and that the child has been between these states since birth.

On February 15, 2019, father initiated the present action under the Domestic Violence Prevention Act, section 6200 et seq., in San Francisco, requesting protective orders as well as sole legal and physical custody of his son. In support of his request for a protective order, father submitted documents evidencing mother's repeated online

---

[2] In addition, this court will not consider any documents filed in other court proceedings or documents filed in the present action after entry of the order on appeal. Accordingly, the parties' requests for judicial notice of these documents are denied. Mother's request for judicial notice of an additional volume of her appendix containing such documents is also denied. Father's motion to strike the "new contentions and legal arguments" asserted for the first time in mother's reply brief is denied as unnecessary.

cyberstalking and harassment of father. Much if not all of the threatening and harassing behavior alleged in the petition involves the child and the petition alleges that the child is at risk as a result of mother's "compulsive, obsessive and abusive behaviors." The petition also alleges that mother has a criminal history of domestic violence and at that time in Utah was facing electronic harassment charges involving a different victim.

On the same day, father obtained a temporary restraining order against mother. The court denied father's request to make a custody determination at that time, noting in the order that the "issue of child custody can be addressed at the hearing [on the permanent restraining order set for March 6] if [the] court has jurisdiction."

On February 19, mother filed a paternity action in New York seeking child support and a restraining order against father. Mother did not disclose in her New York petition the existence of the action she had filed in Los Angeles or the domestic violence action pending in San Francisco. Instead, she attested under oath that no prior application had been made for the same relief.

On March 4, in the San Francisco proceedings, father submitted a memorandum of points and authorities in support of the court's jurisdiction under the UCCJEA and a declaration detailing his unsuccessful attempts to serve mother with the temporary restraining order and notice of the March 6 hearing. The declaration explains that after investigators located mother with her parents in Utah, father attempted through the Office of the Utah County Constable to serve mother at her parents' home. Affidavits signed by constables detail their unsuccessful attempts at service. On three occasions no one answered the door. On seven additional occasions, the grandparents told the person attempting service that mother did not live there and that they had no contact information for her. On February 19, a constable attempted service through mother's criminal defense lawyer, but was refused based on mother's instructions that her attorney not accept service on her behalf. On February 20, father's attorney emailed mother's criminal defense attorney a copy of the temporary restraining order, which included notice of the March 6 hearing. Father's declaration also states that service was attempted twice at the

3

New York address given to father's counsel by mother but the process server was informed by the manager of the building that mother does not live there.

On March 6, the court continued the hearing on the permanent restraining order but issued an amended temporary restraining order awarding father sole custody of the child and authorizing him to retrieve the child, with the assistance of local authorities, from wherever the child might be. Based on mother's statement on the birth certificate and her filing of the paternity action in Los Angeles, the court found that it had "jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act." The court found further that mother was "given reasonable notice and an opportunity to be heard as provided by the laws of the State of California."

At the conclusion of the hearing, the court stated on the record that mother had called the court clerk during the course of the hearing. The court asked the clerk whether mother had asked to remain on the line for the hearing or indicated a preference regarding the date for the continued hearing on the permanent restraining order. The clerk responded that she had not, but indicated she would call back. The court found that mother's phone call was not sufficient to excuse service of notice of the date for the hearing on a permanent restraining order but "clearly" reflected that she was aware of the proceedings.

On March 7, father retrieved his son from the grandparents' home in Utah. He was then required to attend a shelter hearing before a Utah court on March 18. At that hearing, at which mother was represented by counsel and was present "at court, but not in the courtroom," the Utah court issued an order finding that "[t]here is a substantial danger to the physical health and safety of the child based upon the mother's social media posts, which are found to be irrational and histrionic, the mother's pending criminal charges, and the mother's threat of killing herself and the child. The court finds that the mother's behaviors are evidence of the mother's mental instability and immediate risk of harm to the child. The child's physical health or safety may not be protected without removing

4

the child from the custody of the mother." Since then the child has resided in California with his father.

On March 15, mother filed a paternity petition in Utah. In the petition she stated under penalty of perjury that her son had resided with her in Utah since his birth. The Utah court stayed the case based on California's prior exercise of custody jurisdiction. At the same time, mother's parents filed a petition for custody or grandparent visitation in Utah, in which they alleged, under penalty of perjury, that mother had moved to New York and that the child had lived with them in Utah since his birth. The Utah court stayed that case as well.

In her response filed on April 5 and at a hearing on May 8 in the San Francisco action, mother objected to the court's jurisdiction over the child and requested an evidentiary hearing under the UCCJEA. Father argued that the March 6 determination was final and not subject to reconsideration under section 3406 of the UCCJEA.

On June 25, the court held an evidentiary hearing on mother's objection to jurisdiction. Initially, the court concluded that mother's objection was timely and that the prior determination was not binding because it was not made at a contested proceeding. The court explained, "I can't see how due process is served if a jurisdictional decision under UCCJEA can be made and considered to be final with only evidence presented by one side. . . . I know how it played out here, and it just so happened she called in. But literally anybody can file a [domestic violence restraining order] request, and they are always heard. I hear them every day. They land on my desk, and they are uncontested. It's just the application and a request for a temporary restraining order and whatever evidence they presented. [¶] And that would be whether it happened the way it did here or even in that situation where I say, 'Okay.' 'Looks like the kid is in California or born here,' and I check the box saying you get your custody visitation orders, and that's done, that's a done deal, even though if you look at the papers that respondents are served with, they get the notice of hearing, they get something called a DV-120 information packet that says if you disagree with these orders here is how you come in and contest it. [¶] And they would say, 'Okay. Well, clearly the judge got it wrong on that custody part; so I will

5

come in and follow the directions of my papers I just got served with and then to be told 'Sorry. You're too late on that one issue. You had to do something completely different that is not mentioned in these papers.' [¶] And that's why I struggle with this idea that my determination on March 6 with one side here and the other side not was a final determination, and at this point it's final forever absent an appeal that she would not even know to make."

Mother was the sole witness during the evidentiary portion of the hearing. She testified that, other than some "temporary absences," she had lived in Utah since 2017. She has a Utah driver's license. She files taxes in Utah. She has received public benefits in Utah including food stamps and Medicaid since April 2018. In the summer of 2018 she enrolled at Utah Valley University paying "in-state" tuition. On cross-examination, mother was impeached with her numerous contradictory statements contained in her filings in the New York and Los Angeles actions. Over father's objection, the court cut his cross-examination short, indicating that the court was out of time. Following a few minutes for redirect, the court issued its ruling. The court stated, "[H]aving taken everything into account and having listened to respondent's testimony, while I have some difficulty with her credibility on a number of issues, I do find that Utah is the home state. I think [the child] was born there. He lived there for, by my count, about 70 days out of 80, between his birth and the date that this action was initiated in mid February. There was some indication that he -- from emails -- that he was back and forth between other states, but none of the other evidence suggests that. [¶] So my conclusion is that custody and visitation issues will have to be litigated and decided by a Utah court. [¶] So as I mentioned earlier, again, I make that determination based on everything that I heard and notwithstanding some concerns I have about the credibility of the respondent's testimony and some contradictory emails and communications, I think a great weight of the evidence supports that the child was in Utah almost continuously up until the day he was -- when this action was initiated."

A written order confirming the ruling was filed on July 18. The order provides in relevant part: "On the threshold question of whether procedurally the court can properly

6

revisit the finding of home state made in March, that finding was issued without evidence from one side, which is typical for [domestic violence restraining orders]. Like almost all orders issued on an ex parte basis and certainly those under the Domestic Violence Prevention Act, the order issued was temporary, pending a contested, evidentiary hearing. With mother's first appearance in this case, through her response filed on April 5th, she raised a challenge to, among other things, the jurisdictional basis of the court's custody orders included in the March 6th TRO. [¶] . . . Because mother is able to challenge the request for a permanent restraining order on any basis, the court finds that she did not waive her right to challenge any part of the TRO issued on March 6th by failing to file a motion to reconsider or to appeal. This includes the issue of custody jurisdiction, and the underlying custody and visitation orders." The court's written order also provides under the emergency custody jurisdiction of the UCCJEA that "the current custody orders, awarding sole legal and physical custody . . . to father, will remain in place until this matter is taken up by the court in Utah."

Father timely filed a notice of appeal challenging the home state determination and mother timely filed a notice of cross-appeal challenging the emergency custody order.

**Discussion**

*1. The UCCJEA*

The UCCJEA provides the exclusive means for determining the proper forum and subject matter jurisdiction for child custody proceedings involving two states. (§ 3421.) "The UCCJEA is designed to avoid jurisdictional conflicts between states and relitigation of custody decisions, promote cooperation between states, and facilitate enforcement of another state's custody decrees." (*In re R.L.* (2016) 4 Cal.App.5th 125, 136, disagreed with on other ground by *In re J.W.* (2020) 53 Cal.App.5th 347, 366–367.)

As relevant here, jurisdiction is proper in California if California is the "home state of the child" or alternatively, if no other state qualifies at the child's home state and

7

the child and at least one parent have a "significant connection" with California. (§ 3421, subd. (a)(1), (a)(2).)[3]

"Home state" under the UCCJEA means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

A court without jurisdiction under section 3421, subdivision (a), may exercise "temporary emergency jurisdiction" when a "child is present in this state and . . . it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).)

An initial custody determination under the UCCJEA becomes binding on all parties duly served with a copy of the order who had notice and an opportunity to

---

[3] Section 3421, subdivision (a) reads in relevant part: "[A] court of this state has jurisdiction to make an initial child custody determination only if any of the following are true: [¶] (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state. [¶] (2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. [¶] (3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428. [¶] (4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

participate in the hearing. (§ 3406.)[4] The "[n]otice required for the exercise of jurisdiction when a person is outside this state may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective." (§ 3408, subd. (a).) As such, section 3408 authorizes the giving of UCCJEA notice by a method that would not suffice for formal service of process so long as that method is reasonably calculated to give actual notice. (See *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 494 [notifying mother's attorney of record in open court "clearly satisfied" section 3408 requirement], disagreed with on other ground by *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1283 & fn. 2.)

Once a court has made a child custody determination consistent with section 3421, that court has "exclusive, continuing jurisdiction over the determination until either of the following occurs: [¶] (1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships. [¶] (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state." (§ 3422, subd. (a).)

An order determining jurisdiction under the UCCJEA is an appealable order. (See *Schneer v. Llaurado*, *supra*, 242 Cal.App.4th at p. 1279 [reviewing family court order finding California lacks jurisdiction under the UCCJEA to make an initial child custody

---

[4] Section 3406 provides: "A child custody determination made by a court of this state that had jurisdiction under this part binds all persons who have been served in accordance with the laws of this state or notified in accordance with Section 3408 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified."

determination regarding daughter], disagreed with on other ground by *In re J.W.* (2020) 53 Cal.App.5th 347, 366–367; *In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 376 [reviewing order granting motion to quash jurisdiction under the UCCJEA], disagreed with on other ground by *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1283 & fn. 2.)

### 2. *Father's Appeal*

In its March 6 order, the court expressly found that it had "jurisdiction to make child custody orders in this case under the Uniform Child Custody Jurisdiction and Enforcement Act" and that mother was "given reasonable notice and an opportunity to be heard as provided by the laws of the State of California."[5] On appeal, father contends mother's subsequent objection to jurisdiction was untimely and that the court erred in reconsidering its jurisdictional finding. We agree.

Initially, we reject mother's argument that a challenge to jurisdiction under the UCCJEA "may be raised at any time." The statutory scheme clearly provides that the initial jurisdictional finding is binding on those with notice of the proceedings and an opportunity to be heard and grants continuing jurisdiction to the California courts until certain changes in circumstances are established. (See also *In re J.W., supra*, 53 Cal.App.5th at p. 365 [UCCJEA does not implicate fundamental jurisdiction and challenge to jurisdiction is subject to rules regarding forfeiture].)

To the extent the trial court's order suggests that jurisdiction under the UCCJEA is subject to reconsideration at a hearing on a permanent restraining order, we disagree.

---

[5] The court did not, as mother suggested at oral argument, refuse to make any findings regarding the child's home state. Mother misreads the portion of the transcript in which the court states, "I am going to take off the extra sections on these findings because this is being done on an ex parte basis. So I am not making any findings at this point other than he's established, and the court already did that, found that there was domestic abuse sufficient to issue a temporary restraining order. I don't want to make it that we've done anything beyond that. I haven't made any findings. There's been no evidence, there has not been an evidentiary proceeding. I don't want to imply there has." The findings to which the court refers, and which were stricken from the draft order presented to the court, were findings regarding mother's "defaming" father.

10

While the custody determination itself is subject to reconsideration, jurisdiction under the UCCJEA once established at a hearing for which the opposing party had proper notice and an opportunity to be heard persists and remains exclusive until the conditions for termination have been met. Mother made no attempt to demonstrate, nor could she, that those requirements specified in section 3422, subdivision (a) had been met.

A "child custody proceeding" includes a proceeding for "protection from domestic violence." (§ 3402, subd. (d).) A "child custody determination" includes "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." (§ 3402, subd. (c).) Accordingly, when the court issues a temporary restraining order awarding custody of the child to a parent, the court makes a "child custody determination" at a "child custody proceeding" within the meaning of the UCCJEA. To do so, the court is required to determine its jurisdiction—which it did in this case. The court is likely correct that a restrained party under a temporary restraining order would in the usual circumstances not have notice and an opportunity to be heard until the hearing on the permanent restraining order, thus the determination would not be binding. The facts in this case, however, are unusual. The relevant question is whether mother was given notice and an opportunity to be heard as required by section 3408 before the jurisdictional finding was made.

Mother unquestionably had actual notice of the hearing. While she testified at the evidentiary hearing that she randomly called courts in Los Angeles, New York, and San Francisco and just happened to reach the San Francisco court during the hearing, the court reasonably found her testimony lacked credibility. At oral argument, mother acknowledged making the call and admitted that she knew that the hearing was taking place because she had searched the court docket. She asserted, however, that she did not know that custody of the child was being addressed at the hearing. Mother could not have obtained access to the docket in the family law department without knowing the case number, which strongly suggests that although avoiding service, she had received the father's notice of the hearing. The notice contained in the temporary restraining order

11

emailed to the attorney representing her in her pending criminal case in Utah expressly stated that the court intended to determine its jurisdiction over the child at the hearing. The docket, of which we take judicial notice, indicated the scheduled hearing and that father was requesting "domestic violence protective orders and custody orders." Mother's failure to take any action in the face of this actual notice renders the court's jurisdictional finding binding. (See *In re Marriage of Nurie, supra,* 176 Cal.App.4th at p. 494 [where mother had actual notice of hearing but failed to appear, "[t]rial court properly found that [mother] had an opportunity to be heard and simply failed to avail herself of it"]; *In re Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1380 [court's jurisdictional finding upheld where mother was given notice of the impending custody determination by overnight mail and record reflects mother had actual notice of hearing].)

Moreover, mother was served on March 18 with the amended temporary restraining order, which included the express finding that she had been given notice and an opportunity to be heard before the custody order was entered. Mother took no action to appeal or seek to have the trial court revise that order. Rather, on April 5, mother submitted a response challenging jurisdiction on the ground that Utah was the child's home state, and on May 18 her attorney appeared at a hearing and argued that mother was entitled to challenge jurisdiction at any time.

While perhaps arising from an unusual procedural circumstance, the result is entirely consistent with the purpose of the UCCJEA. The UCCJEA is designed to prevent " ' " 'the harm done to children by shifting them from state to state to relitigate custody.' " ' " (*In re Marriage of Nurie, supra*, 176 Cal.App.4th at p. 497.) Exclusive, continuing jurisdiction provides certainty and consistent judicial oversight of custody determinations. (*Id*. at p. 501.) Mother's attempts at forum shopping are entirely inconsistent with the purposes of the UCCJEA and all the more reason that one court should provide consistent oversight of the child's custody.

Accordingly, the order finding that Utah is the child's home state is reversed and the matter remanded for further proceedings.

## Disposition

The order is reversed. Father is to recover his costs on appeal.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.