Filed 9/4/24  In re E.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.L., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E081162, E082007 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1800298) |
| v. | OPINION |
| J.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Reversed and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E Rupp, Deputy County Counsel for Plaintiff and Respondent.

1

J.D. (mother) appeals from postpermanency orders of the juvenile court, during which the court addressed its continuing jurisdiction over a guardianship established for mother's son, E.L. Specifically, mother argues the juvenile court erred by not ruling on her request to find California to be an inconvenient forum pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.; all undesignated statutory references are to the Fam. Code), and to transfer the proceeding to Iowa, where she, E.L., and almost all their relatives live. In addition, mother contends the Riverside County Department of Public Social Services (DPSS) did not comply with its duty to adequately inquire whether the children were Indian children under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law.

We reverse and remand for the juvenile court to properly address mother's claim that California is an inconvenient forum and to make appropriate findings. Mother's claim of error under ICWA is not ripe, so we will not address it.

I.

FACTS AND PROCEDURAL BACKGROUND

A.      *Original Dependency Proceedings And Establishment of Guardianship With Paternal Relatives In Iowa.*

After investigating a referral about domestic violence in the home, DPSS applied for and received protective custody warrants and took E.L. and his siblings M.B. and A.B. into custody. In a petition filed May 9, 2018, DPSS alleged the children were dependents of the juvenile court under Welfare and Institutions Code section 300,

2

subdivision (b)(1). Specifically, DPSS alleged mother engaged in domestic violence with E.L.'s stepfather in the presence of the children; mother had unaddressed mental health issues, including bipolar disorder and borderline personality disorder, which limited her ability to care for the children; and mother had a child welfare history for domestic violence issues but failed to benefit from her services. Mother denied E.L. had any known Indian ancestry and informed the social worker that E.L.'s father was deceased.

During the detention hearing, mother and E.L.'s maternal grandparents denied having Indian ancestry. The juvenile court made a prima facie finding on an amended petition and ordered E.L. detained. The juvenile court found ICWA might apply but also found it had no reason to believe E.L. might be an Indian child. The same day, mother filed a Judicial Council Forms, form ICWA-020 in which she again denied having known Indian ancestry.

In its report for the jurisdiction hearing, DPSS informed the juvenile court that mother and E.L.'s maternal grandparents had again denied having known Indian ancestry. E.L. had been placed in the same foster home as two other half siblings, and DPSS recommended he remain detained out of mother's custody. E.L.'s deceased father was listed on the child's birth certificate. The juvenile court continued the hearing for DPSS to make ICWA inquiry as to the father.

In an addendum report, DPSS indicated a social worker had spoken to J.S., E.L.'s paternal aunt. The aunt said father and the child's paternal grandmother were both deceased and neither the aunt nor father had Indian ancestry. The aunt provided the

3

social worker with the names and birth dates for father's extended family members as well as the contact information for the paternal grandfather. After several attempts, the social worker was unable to speak to the paternal grandfather on the telephone or leave him a message. However, the aunt later told the social worker her family might have Cherokee ancestry, so DPSS mailed notices to the federal Bureau of Indian Affairs and the various Cherokee tribes. The Eastern Band of Cherokee Indians responded and informed DPSS that based on the information DPSS had provided, E.L. was not a member of or eligible for membership in the tribe. Later, the Cherokee Nation responded and indicated the tribe concluded, based on the information it had received from DPSS, E.L. was not an Indian child within the meaning of ICWA.

At the continued jurisdiction hearing, the juvenile court sustained the allegations contained in an amended petition, declared E.L. to be a dependent of the court, ordered him removed from mother's custody and placed in foster care, and directed DPSS to offer mother family reunification services. The court found ICWA did not apply.

Prior to the six-month review hearing, the juvenile court granted an ex parte application from DPSS to commence an Interstate Compact on the Placement of Children ("ICPC") study for J.S., who lived in Iowa. In its report for the hearing, DPSS informed the juvenile court that E.L. was healthy and developing normally. Mother was making adequate progress in her case plan with respect to parental and domestic violence classes, but she had not been compliant with therapeutic and psychiatric services, and she had not submitted to a psychiatric evaluation. The juvenile court found DPSS had provided

4

mother with reasonable reunification services, mother had made adequate progress in alleviating or mitigating the causes of the dependency, and directed DPSS to continue offering and providing services to mother. The court found ICWA did not apply and that DPSS made sufficient inquiry.

In its report for the 12-month review hearing, DPSS informed the juvenile court that mother had again denied having Indian ancestry in her family and said she believed father had none either. In addition, the child's paternal aunt J.S. again denied that father's family had Indian ancestry. E.L. remained in the same foster home with his half siblings, and the ICPC study regarding placing the child with father's family in Iowa was still pending. Based on mother's lack of progress and failure to participate in reunification services, DPSS now recommended the juvenile court terminate family reunification services and set a hearing to select a permanent plan for the child.

The juvenile court found DPSS had provided mother with reasonable family reunification services, mother's progress at alleviating or mitigating the causes of the dependency had been minimal, terminated mother's reunification services, and set a hearing under Welfare and Institutions Code section 366.26.

Prior to the hearing, DPSS reported E.L. had been placed with his paternal aunt J.S. and her husband in Iowa. Likewise, E.L.'s half siblings had been placed with their father in Iowa. DPSS recommended the juvenile court terminate mother's parental rights and select adoption as the permanent plan for E.L. The juvenile court approved the case plan with adoption as E.L.'s permanent plan and selected J.S. and her husband as the

5

holders of the child's educational rights. In addition, the court ordered DPSS to make E.L. available in Iowa for a bonding study to include his siblings there. The court again found ICWA did not apply.

During a contested evidentiary hearing, the juvenile court was advised E.L.'s aunt and uncle did not wish to adopt the child but wished to be made his legal guardians instead. Therefore, the juvenile court selected guardianship as the permanent plan for E.L., placed the child with his aunt and uncle in Iowa, and issued letters of guardianship.

Thereafter, the juvenile court terminated dependency jurisdiction.

B. *Proceedings To Dissolve The Guardianship And Decide Jurisdiction Under The UCCJEA.*

Almost exactly two years later, on February 15, 2023, Judge Rushton of the juvenile court convened a joint hearing under the UCCJEA with Judge Clay, a judge of the Iowa District Court. Judge Clay indicated mother had filed a petition in Iowa to dissolve the guardianship and return E.L. to her custody. Judge Rushton stated California retained jurisdiction over the guardianship and the appropriate means to dissolve it would be for mother to file a petition for a change of order pursuant to Welfare and Institutions Code section 388. He also noted that, under the UCCJEA, Iowa could only obtain jurisdiction over E.L. if California relinquished its jurisdiction or if California was found to be an inconvenient forum. Judge Clay agreed that if California did not relinquish jurisdiction, California would retain jurisdiction to hear a modification petition and a motion to dismiss the Iowa proceeding filed by E.L.'s guardians should be granted.

6

Mother's counsel informed the juvenile court that she filed the proceeding in Iowa on mother's behalf and the Iowa court had already returned E.L.'s half siblings to mother's custody. Judge Rushton stated the Iowa family court should have conducted a UCCJEA conference with the California juvenile court before it entered such an order.

Mother's counsel also told the juvenile court all of mother's children were born in Iowa and have resided there for more than six months. Counsel explained that, although California had ongoing jurisdiction, the purpose of the hearing that day was "to see if California is going to persist in jurisdiction or if jurisdiction [would be] transferred to Iowa." Therefore, counsel argued, "because [E.L.] hasn't been in California, it seems certainly inconvenient to me to—to persist in jurisdiction in California where no one resides, no one intends to be. My clients are living [in] Iowa for over the year, and the child over six months." Judge Rushton responded, "Frankly, I don't even—and to be honest, I don't even know if the issue of inconvenient forum applies to the issues of legal guardianships. My understanding of legal guardianships established through the dependency court is the court who issues the legal guardianship maintains ongoing jurisdiction over modification of that legal guardianship."

Counsel for the guardians also argued it would be more convenient to have the proceeding heard in Iowa, but insisted they would abide by the juvenile court's order. Counsel for the guardians explained they had moved to dismiss the proceeding in Iowa because California retained jurisdiction over the guardianship. Counsel for E.L. and DPSS agreed with the juvenile court that California retained jurisdiction and the

7

appropriate means to dissolve the guardianship and obtain an order returning the child to mother would be for her to file a petition in the juvenile court for a change of order.

Judge Rushton indicated its ruling was "California retains home state jurisdiction over the child [E.L.] and [his] legal guardianship and that California is not willing at this time to relinquish home state jurisdiction." Judge Clay stated she would accept the ruling and dismiss the Iowa proceeding for lack of jurisdiction. After confirming mother lives in Iowa, Judge Rushton stated the court would "await mother's action in the state of California."

The same day mother filed a petition in the juvenile court for a change of order, requesting the court rescind the guardianship. E.L.'s guardians filed their petition less than two weeks later and asked the juvenile court to rescind the guardianship. The guardians stated an order rescinding the guardianship would "be better for both parties" because "[i]t isn't working having [E.L.] live with us."

Prior to the juvenile court hearing the guardians' petition, mother filed a motion to transfer E.L.'s case to Iowa on the grounds California was an inconvenient forum. First, mother argued that because E.L., mother and all other parties no longer resided in California and had resided in Iowa for more than six months, California no longer had jurisdiction. Last, relying on section 3427, mother argued California was no longer a convenient forum and it should stay the proceedings and transfer the matter to Iowa. "The child in this case has now resided in Iowa for nearly four years. The distance between this Court and the court that would assume jurisdiction in Iowa is several

thousand miles away. The degree of financial hardship to the parties to purchase airline tickets and fly to California for hearings is great. All of the evidence and witnesses regarding the minor child and all of the parties is in Iowa. Iowa is a sister state and has the same or similar ability to expeditiously handle these proceedings. The Court in this state has no familiarity of what has been transpiring in Iowa over the last few years, including the fact that [mother's] other two children have been returned to her and are now living with her." Mother supported the motion with a declaration under penalty of perjury, a copy of her Iowa driver's license, and a utility bill demonstrating her Iowa address.

In its report and response to the guardians' petition for change of order, DPSS indicated the guardians told the social worker the petition was prompted by E.L.'s "deteriorating and difficult behaviors." According to the guardians, E.L.'s negative behaviors included, among others, lying, upsetting his younger cousin, disrespecting his guardians and grandfather, and displaying "inappropriate sexual behaviors." J.S. reported E.L. "became most difficult when he learned that his siblings went home with their mother because he could not understand how they could go home and he cannot." She also reported the failing guardianship had been very hard on her family, and she believed E.L.'s only chance to thrive would be in mother's care because "he craves that family." Although she conceded mother's home was chaotic, J.S. said "that is 'what he knows.'" The guardians said they were willing to care for E.L. until the end of the school year and they would return the child to California if directed by the juvenile court. DPSS

recommended the juvenile court grant the petition, rescind the guardianship, and reinstate the dependency over E.L.

At the hearing on the guardian's petition conducted April 11, 2023, the juvenile court (with Judge Rushton again presiding) acknowledged it had received and reviewed mother's forum non conveniens motion. The court indicated "the consensus at the UCCJEA [conference] was that this state retains home state jurisdiction. And this Court was unwilling to waive the home state jurisdiction issue." When asked if mother's counsel wished to address the jurisdictional issue, counsel argued Iowa now had "original jurisdiction" over the guardianship because mother and E.L. resided there. In the alternative, counsel argued California was no longer a convenient forum and that Iowa was the appropriate forum to adjudicate the remaining guardianship and custody issues. "[S]ince the child's not here and nobody—nobody's here, I believe this is a nonconvenient forum. It would be extremely expensive for the—for my client and probably for everybody else to come out here to California to testify and to present evidence and subpoena witnesses. I just don't see how that would possibly work out, not to mention the fact that the child has now—has been in Iowa for, I believe, three years at least, if not more, and all of the witnesses and evidence and connections are in Iowa, so this would be a really big intrusion on the child, Your Honor."

Counsel for E.L. also expressed concerns about California continuing to exercise jurisdiction. "[E.L.] has been in school there for three years. His siblings live in Iowa. His mother lives in Iowa. And he has indicated not wanting to change schools. It sounds

10

like he's very involved in extracurricular activities, sports, things like that, so I'm just looking at his best interest and whether that would be served by bringing him back to California. And I'm not really seeing how that would be." Counsel stated, "I think the UCCJEA was designed for cases like this where it's clear that California really doesn't have any of the, so to speak, players in the case living here anymore."

The juvenile court ruled California had home state jurisdiction at the time dependency proceeding was commenced, it retained continuing jurisdiction over the guardianship, and Iowa did not have "original jurisdiction." The court indicated, "The basis for declining ongoing jurisdiction would be inconvenient forum." However, the court stated, "We already had a full hearing on this—the same issue, which is the—the petition to modify or terminate the legal guardianship. It's certainly not this Court's fault that the mother filed that in the wrong state and in the wrong court in the state of Iowa. But that being said, this Court finds that it has home state jurisdiction."

Having found it had jurisdiction to rule on the guardian's petition, the juvenile court granted the petition, reinstated the dependency, and left the guardianship open until E.L. could complete the school year. The court found ICWA did not apply. The court directed mother's counsel to advise mother not to "pursue an alternative remedy in another court" without first noticing the juvenile court, so both courts could conduct a UCCJEA conference. Finally, the court directed the clerk to note in the minutes "the Court ruled that the UCCJEA issues associated with this case have already been litigated."

11

Mother timely appealed.

The next month, mother filed a motion in Iowa to register E.L.'s guardianship but the Iowa court took no action on it because mother did not submit proof that she had noticed the juvenile court here. DPSS noticed a review hearing and filed a report indicating mother had violated the prior order that she notice the juvenile court if she pursued remedies in another forum.

At the review hearing conducted by Judge Crandell, counsel for DPSS and for E.L. informed the court that Judge Rushton had conducted earlier hearings and ruled the juvenile court had continuing jurisdiction under the UCCJEA. Mother's attorney again expressed the view that Iowa had jurisdiction. The court noted it had reviewed the minutes of the previous hearing which stated the court had already litigated the question of jurisdiction under the UCCJEA. Counsel for DPSS agreed. Judge Crandell took the matter under submission and stated he would address the matter further at the next hearing.

At the next scheduled hearing, this time presided over by Judge Forstenzer, mother's counsel again argued California no longer had jurisdiction. Citing section 3427, counsel argued in the alternative that California was an inconvenient forum. "The Court can make that request, could be made at any time if the Court determines that it's an inconvenient forum. And for the purposes here, everyone's been a resident of the state of Iowa for a number of years now. The child, my client, the guardians, all of the witnesses regarding everything that's been going on are in Iowa." Counsel asked for a continuance

12

to review untimely received reports from the social worker, but then asked the court to immediately rule on mother's request for a finding that California is an inconvenient forum. "The problem is all of the witnesses are in Iowa. These other two children that are 17 and 15 that have been living with my client for the last two years—I think it's of the utmost importance to get their take on the situation and what's going on." Counsel for E.L. objected to a continuance and stated the jurisdictional issues had already been litigated.

Judge Forstenzer noted the minutes indicated "that a UCCJEA hearing has previously been held and determined by this Court," and he was not "in a position to reverse that ruling." Mother's counsel responded that mother had previously requested a ruling that (1) California lacked jurisdiction or (2) that pursuant to section 3427 California was an inconvenient forum. Mother was not asking the court to reverse the prior finding that California had home state jurisdiction. However, counsel stated, "I don't believe that the Court necessarily took into account all of these other determinations" set forth in section 3427, so "I'm asking the Court to reconsider that request today because, like I said, the statute, I believe, permits the Court to do it at any time."

Judge Forstenzer once more noted "it appears that this matter has already been litigated at least as to home state jurisdiction," and he would not consider the question of forum non conveniens "because I think that's got to be the subject of a noticed motion so that all parties have notice of that hearing." Mother requested that witnesses be permitted

13

to appear telephonically, but counsel for DPSS objected that the court traditionally did not permit telephonic appearances for evidentiary purposes because "there is no ability to judge the veracity of witnesses." Mother's counsel responded, "Well, that's another problem with the forum non conveniens because they're putting my client in an impossible situation. She's a homemaker. She doesn't have a lot of funds. She's got two kids she's caring for over there. She has no ability to come over here with the children and testify. And the other witnesses that are over there, I can't compel these people to come to California. So [DPSS] is arguing that the right forum is here in California, yet I'm precluded from calling any witnesses that are all in Iowa."

After further discussion, Judge Forstenzer indicated mother's forum non conveniens argument might have merit, but that she would need to file a noticed motion. Mother's counsel indicated he had already filed a noticed motion but would renotice it. The court granted the guardian's request to rescind the guardianship and continued the review hearing on a permanent plan for E.L.

E.L. was returned to California and placed in a foster home. DPSS was assessing a maternal grandfather who resided in California for placement, though it expressed concerns about his suitability.

Mother filed a new motion pursuant to section 3427, again requesting the juvenile court rule California is an inconvenient forum. Mother indicated that she was now unemployed and could not afford to travel to California to participate in the proceedings.

14

Finally, at a hearing conducted July 11, 2023, once more presided over by Judge Crandell, DPSS recommended the juvenile court place E.L. with a relative with jurisdiction to remain in Riverside county. Counsel for E.L. indicated that, although the question of the appropriate jurisdiction had been litigated multiple times, the child wished to be returned to his mother's custody in Iowa. Counsel stated the child's maternal grandfather was "pretty much the only relative in California."

Mother's counsel said that, although he had raised the issue of jurisdiction before, he would do so once again because, "pursuant to Family Code Section 3427, Subsection (a), the Court can decline to [exercise] jurisdiction at any time if it determines that it's an inconvenient forum." Counsel asked the juvenile court to permit mother and other witnesses to testify remotely on the question of inconvenient forum "because all the evidence is in Iowa. All the parties are in Iowa. The child is still a resident in Iowa and transferred to California in June over my client's objection. It's just inconceivable for these proceedings to continue in California, because my client is essentially completely precluded from putting on a case." And, because mother was not financially able to travel to California multiple times or pay for other witnesses to travel here, she was unable to present her case here and she requested the court "make a ruling that California is not even the forum and this should be done in Iowa." Counsel for DPSS took the position that "the most appropriate venue is what has already been determined by this Court, which is Riverside County."

Judge Crandell stated, "It is this Court's opinion that the issue of jurisdiction had been previously ruled on by Judge Rushton and the jurisdiction is going to remain within Riverside County."  The court also ruled that DPSS had made sufficient inquiry under ICWA, there was no new or additional information that would indicate ICWA might apply, and, therefore, ICWA did not apply.

Mother again timely appealed.[1]

## II.

## DISCUSSION

A.    *The Juvenile Court Did Not Rule on Mother's Claim Under The UCCJEA That California Is An Inconvenient UCCJEA, And The Court Must Do So On Remand*.

1.  Applicable law and standard of review.

"California adopted the UCCJEA effective January 1, 2000.  (§ 3400 et seq.; Stats. 1999, ch. 867, § 3; *In re Christian I.* (2014) 224 Cal.App.4th 1088, 1096.)  The UCCJEA is the exclusive method of determining subject matter jurisdiction in child custody cases. (§ 3421, subd. (b); *Keisha W. v. Marvin M*. (2014) 229 Cal.App.4th 581, 585-586.)" (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1287 (*Schneer*).)  With minor exceptions not applicable here, the UCCJEA applies to any "[c]hild custody proceeding," including guardianship proceedings.  (§ 3402, subd. (d); see *Guardianship of Ariana K.* (2004) 120 Cal.App.4th 690, 701-702.)

---

[1] We consolidated the appeals in case Nos. E081162 and E082007 for all purposes.

16

"The purposes of the UCCJEA are 'to avoid jurisdictional competition between states or countries, promote interstate cooperation, avoid relitigation of another state's or country's custody decisions and facilitate enforcement of another state's or country's custody decrees.  [Citation.]'  (*In re Gloria A*. (2013) 213 Cal.App.4th 476, 482.)  'Pursuant to the UCCJEA, California courts have jurisdiction over child custody determinations only if the child's home state is California, or the child's home state does not have jurisdiction or declined jurisdiction in favor of California.  (§ 3421.)'  (*In re Marriage of Richardson* (2009) 179 Cal.App.4th 1240, 1243.)  The UCCJEA prioritizes home state jurisdiction over other bases of jurisdiction.  (*Brewer* [*v. Carter* (2013)] 218 Cal.App.4th [1312,] 1317; 9 pt. 1A West's U. Laws Ann. (1999) U. Child–Custody Jurisdiction and Enforcement Act, com. foll. § 201, p. 672 ['The jurisdiction of the home State has been prioritized over other jurisdictional bases'].)"  (*Schneer*, *supra*, 242 Cal.App.4th at pp. 1287-1288.)

The UCCJEA provides that a court having jurisdiction over a child custody dispute may nonetheless decline to exercise its jurisdiction in favor of a more convenient forum.  "A court of this state that has jurisdiction under this part to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.  The issue of inconvenient forum may be raised upon motion of a

17

party, the court's own motion, or request of another court." (§ 3427, subd. (a).)[2] And, if the court concludes California is not a convenient forum and that the courts of another state would be a more appropriate forum to decide the child custody dispute, the California court must stay the proceedings here "upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper." (*Id*., subd. (c).)

When deciding whether California is an inconvenient forum, the trial court must consider whether it is appropriate for the courts of another state to exercise jurisdiction over the child custody dispute. (§ 3427, subd. (b).) The trial court must permit the parties to submit information relevant to that issue and consider all relevant factors, including: "(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child. [¶] (2) The length of time the child has resided outside this state. [¶] (3) The distance between the court in this state and the court in the state that would assume jurisdiction. [¶] (4) The degree of financial hardship to the parties in litigating in one forum over the other. [¶] (5) Any agreement of the parties as to which state should assume jurisdiction. [¶] (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child. [¶] (7) The ability of the court of each state to decide the issue

---

[2] DPSS does not cite or discuss section 3427 in its brief, and instead addresses Code of Civil Procedure sections 410.30 and 418.10. Because the UCCJEA "is the exclusive method for determining the proper forum in child custody proceedings involving other jurisdictions" (*In re L.C.* (2023) 90 Cal.App.5th 728, 735), we decline to address those more general provisions.

18

expeditiously and the procedures necessary to present the evidence. [¶] [and] (8) The familiarity of the court of each state with the facts and issues in the pending litigation." (*Ibid.*)

The trial court must "provide[] the parties with an opportunity to submit evidence relevant to the court's determination of whether California was a convenient forum or [the sister state jurisdiction] was an appropriate forum." (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1319.) "The court has broad discretion with respect to weighing the applicable factors and determining the appropriate weight to accord to each. However, the court cannot ignore any relevant circumstance enumerated in section 3427, subdivision (b); rather, the trial judge must recognize and apply each applicable statutory factor." (*Id.* at p. 1320.) On a silent record, "we must presume the trial court fully discharged its duty to consider all of the relevant statutory factors and made all of the factual findings necessary to support its decision for which there is substantial evidence. [Citations.] Where the record reflects what the court actually did, however, these presumptions do not apply." (*Ibid.*) In addition, if the parties are not afforded the opportunity to present evidence on the relevant factors, "we decline to presume the trial court made the factual findings necessary under section 3427." (*Ibid.*)

In general, the question of whether to decline to exercise jurisdiction based on forum non conveniens "is within the trial court's discretion, and substantial deference is accorded its determination in this regard." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751.) The abuse of discretion standard of review has been applied to forum non

19

conveniens rulings under the Uniform Child Custody Jurisdiction Act (UCCJA) (former § 3400 et seq.) (*In re Stephanie M.* (1994) 7 Cal.4th 295, 312) and under its successor, the UCCJEA. (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 513; *Taylor M. v. Superior Court* (2003) 106 Cal.App.4th 97, 110.) Under that standard, "'"a reviewing court will not disturb [the trial court's] decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]."'" (*In re Stephanie M.*, at p. 318.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*Id.* at pp. 318-319.)

    2.  Analysis.

As mother argues in her briefs, the juvenile court never ruled on her request to find California was an inconvenient forum to decide the remaining issues related to the guardianship of E.L. In fact, it appears from the record the juvenile court was not fully aware of the scope of its discretion under the UCCJEA. "'Normally, we must presume the trial court was aware of and understood the scope of its authority and discretion under the applicable law. [Citations.] "This rule derives in part from the presumption of Evidence Code section 664 'that official duty has been regularly performed.'" [Citation.] The rebuttable presumption under section 664 "'"affect[s] the burden of proof" (Evid. Code, § 660), meaning that the party against whom it operates . . . has "the burden of proof" as to the nonexistence of the presumed fact. (Evid. Code, § 606 . . . .)'"

[Citation.]" (*Victor Valley Union High School District v. Superior Court* (2023) 91 Cal.App.5th 1121, 1152.)

"'If the record demonstrates the trial court was unaware of its discretion or that it misunderstood the scope of its discretion under the applicable law, the presumption has been rebutted, and the order must be reversed. [Citation.] "'[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' [Citations.] Therefore, a discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made. [Citation.] Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law. [Citations.] Therefore, a discretionary order based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal even though there may be substantial evidence to support that order. [Citations.] If the record affirmatively shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise informed discretion with awareness of the full scope of its discretion and applicable law.'" [Citation.]" (*Victor Valley Union High School District v. Superior Court*, *supra*, 91 Cal.App.5th at pp. 1152-1153.)

To repeat, the UCCJEA, which expressly applies to guardianship proceedings, provides a court having jurisdiction over a child custody proceeding may nonetheless

21

decline to exercise its jurisdiction if it concludes California is not a convenient forum and another state is more appropriate. (§§ 3402, subd. (d), 3427, subd. (a).) Yet, at the first hearing on the issue of jurisdiction Judge Rushton said, "I don't even know if the issue of inconvenient forum applies to the issues of legal guardianships." A trial court cannot be said to have exercised informed and reasoned discretion when the court believed it lacked the authority to act in the first place. (See, e.g., *Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 333-338.)

Moreover, it appears the juvenile court conflated the concepts of home state jurisdiction under the UCCJEA and forum non conveniens. Although Judge Rushton said on the record that forum non conveniens would be the only basis for the juvenile court to decline to exercise jurisdiction, he merely reiterated his finding that California had home state jurisdiction and seemed to take the position that such a finding precluded a finding of inconvenient forum. "'[T]he question of whether jurisdiction exists is distinct from the question of whether it should be exercised. . . . Even if a determination that jurisdiction exists is made, the court may decline to exercise jurisdiction, or it may stay the proceedings upon the condition that custody proceedings be initiated in another state.'" (*Plas v. Superior Court* (1984) 155 Cal.App.3d 1008, 1018 [applying forum non conveniens provision of UCCJA]; see generally *Outboard Marine Corp. v. Superior Court* (1976) 59 Cal.App.3d 434, 437 ["The concept of *forum non conveniens* is different and distinct from the concept of jurisdiction."].) For example, in *Schneer*, *supra*, 242 Cal.App.4th 1276, we reversed a family court ruling that Florida, and not California, had

home state jurisdiction to decide a child custody dispute. (*Id*. at pp. 1282-1283, 1288-1289.) Although we held California had home state jurisdiction, we were careful to note that our holding was "without prejudice to [the] mother asserting on remand that California is an inconvenient forum, *and that the family court should decline to exercise jurisdiction for that reason. (§ 3427.)*" (*Schneer*, at p. 1289, fn. 9, italics added.)

Finally, even if we were to conclude the juvenile court properly understood it had discretion to find that California is an inconvenient forum, notwithstanding its having home state jurisdiction, we would still find error. Judge Rushton ruled "California retains home state jurisdiction over [E.L.] and has legal guardianship and that California is not willing at this time to relinquish home state jurisdiction." But, the juvenile court did not expressly rule California is a convenient forum or address section 3427 and the relevant factors listed therein. And, in every subsequent hearing the juvenile court said the jurisdictional issues had already been litigated and it would not revisit Judge Rushton's prior ruling that California had home state jurisdiction. On this record, we simply cannot presume the juvenile court implicitly weighed the relevant factors under section 3427 and ruled California was a convenient forum. (*Brewer v. Carter*, *supra*, 218 Cal.App.4th at p. 1320.)

Therefore, we reverse and remand for the juvenile to court to properly address mother's assertion under section 3427 that California is not a convenient forum. (*Victor Valley Union High School District v. Superior Court*, *supra*, 91 Cal.App.5th at pp. 1152-1153.)

B.      *We Will Not Address Mother's Claim Of Error Under ICWA Because It Is Not Ripe.*

Last, mother argues DPSS did not satisfy its duty of inquiry under ICWA because it did not inquire of extended family members, as required under Welfare and Institutions Code section 224.2, subdivision (b).  Because DPSS is under a continuing duty of inquiry under ICWA and we are remanding for additional proceedings at which the juvenile court must make further ICWA findings, mother's claim of error is not yet ripe for review.

"The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions.  [Citation.]  It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.)  "'"Ripeness" refers to the requirements of a current controversy.' [Citation.]  An issue is not ripe for review unless and until it is 'sufficiently concrete to allow judicial resolution even in the absence of a precise factual context.' [Citation.]" (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 461.)

"Because this case is ongoing and the department and court are under a continuing duty to inquire whether [the children] may be Indian children, [mother's] claim of inadequate inquiry isn't ripe." (*In re T.R.* (2023) 87 Cal.App.5th 1140, 1154.)  Therefore, we do not address mother's claim of ICWA error at this time.  She may renew her concerns in that regard to the juvenile court on remand.

24

III.

DISPOSITION

The orders of the juvenile court dated April 11 and July 11, 2023, are reversed and the matter is remanded for the court to conduct a hearing pursuant to Family Code section 3427 consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

CODRINGTON

      J.

FIELDS

      J.