Filed 7/16/25  Katkin v. Komorebi CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANDREW KATKIN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>AMADASOPHIA KOMOREBI,<br><br>    Defendant and Appellant. | H050891<br>(Monterey County<br>Super. Ct. No. 21PT000030) |

Amadasophia Komorebi (Mother) and Andrew Katkin (Father) are the parents of a now nearly six-year-old child, A.K.  For her first 17 months, A.K. lived with Mother in Massachusetts, but in December 2021, Mother brought A.K. to California to meet Father.  Nearly three months later, in late February 2021, based in part on concerns about A.K.'s health and development, the trial court issued an emergency order granting temporary physical custody to Father.  Later, after an evidentiary hearing and a trial, the court granted Father temporary legal custody, and eventually it granted Father permanent legal and physical custody over A.K.

Mother appeals these custody orders.  She argues that the trial court lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Family Code, § 3400 et seq.) because Massachusetts was A.K.'s home state when this case commenced in February 2021.  (Subsequent undesignated statutory

references are to the Family Code.) Alternatively, Mother challenges the trial court's orders on procedural and substantive grounds.

As explained below, we conclude that the trial court had jurisdiction under the UCCJEA and that Mother's procedural and substantive challenges are unavailing. We therefore affirm the judgment.

## I. BACKGROUND

Consistent with the applicable standards of review, we state the facts in the light most favorable to the judgment. (See, e.g., *Los Angeles Unified School Dist. v. Casasola* (2010) 187 Cal.App.4th 189, 194, fn. 1; *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

### A. A.K.'s Birth

In the spring of 2018, Mother and Father met in Massachusetts, they entered into a romantic relationship, and Mother became pregnant. Father accused Mother of "birth control sabotage," and Mother accused Father of not disclosing that he was married. Consequently, their relationship soured, and in February 2019 they largely broke off contact. A.K. was born in July 2019 in Massachusetts, and Mother raised A.K. there for the next 17 months without Father, who told Mother he did not intend to be part of A.K.'s life.

### B. Travel to California

In the spring of 2020 Mother called Father, and the two began talking again. Eventually, Father suggested that Mother bring A.K. to California to see him, and he paid for Mother to fly to California with A.K. and stay in Monterey. A.K. and Mother arrived on December 1, 2020.

For the better part of the next three months, A.K. stayed with Mother in California. At some point, Mother filed for child support in California. In addition, Mother applied for public assistance, obtained an electronic banking transfer card from the State of California, and began receiving monetary assistance.

2

During this period, Father became concerned about A.K.'s health and development. In particular, Father was concerned that A.K. was abnormally small, weighing less than 20 pounds at 18 months, which he contended put her below the second percentile for weight. He also was concerned that A.K. had not had routine medical checkups or vaccines, was not permitted to drink water, and was kept on a strict vegan diet that did not provide adequate nutrition. Finally, Father was concerned that A.K. did not know any words beyond those Father had taught her and that Mother was overwhelmed by caring for A.K.

## C. Proceedings Below

### 1. *The Ex Parte Emergency Application*

In mid-February, Mother informed Father that soon she would be leaving with A.K. but refused to tell him where she was going and instead said that he would no longer be able to see A.K. As Mother, who was apparently born under the name Amanda Rodriguez, had previously lived in Mexico, did not have a job, and had obtained a passport for A.K., Father worried that Mother would remove A.K. from California and endanger her health.

On February 16, 2021, Father filed a petition to establish parental rights and, two days later, an ex parte application for a temporary emergency order. In support of the emergency order request, Father filed a declaration detailing his concerns about the health and development of A.K. Father also noted that Mother had applied for public assistance as well as child support in California. Finally, Father described his efforts to learn about parenting as well as his family support.

On February 23, 2021, the trial court issued an emergency order granting Father temporary physical custody of A.K. The order gave Mother three hours daily of parenting time, but required that another adult be present to prevent abduction and prohibited Mother from taking A.K. outside of Monterey, Santa Cruz, San Mateo, and San Luis Obispo counties. The order also required that A.K. be immediately evaluated

3

by a pediatrician. Finally, the order scheduled a hearing on temporary custody for a month later on March 18, 2021.

On February 25, 2021, with the help of the police, Father took physical custody of A.K.

### 2. *The Temporary Custody Hearing*

Before the temporary custody hearing, Mother filed a declaration and a memorandum of points and authorities. Mother argued that under the UCCJEA the trial court lacked jurisdiction over A.K.'s custody because A.K. was in California only temporarily and her home state was Massachusetts. According to Mother, she and A.K. had been in California for three months on a "vacation," "extended winter recess," or "holiday visit," and they intended to return to Massachusetts afterwards. (Boldface omitted.) Mother also disputed Father's contentions about A.K.'s health and development, and she questioned Father's fitness as a parent, asserting that he had drug and mental health problems, did not take good care of A.K., and only became interested in obtaining custody of A.K. after she filed for child support, which Mother admitted she had done in California. Mother did not discuss whether that she had applied for public assistance in California.

After receiving additional evidence and briefing from Father, and conducting a hearing, the trial court issued an order awarding Father temporary legal and physical custody. The trial court found that it had jurisdiction under the UCCJEA. It determined that Massachusetts did not have home state jurisdiction over A.K. because A.K. had not been present in Massachusetts for the preceding six months and Mother's applications for child support and public assistance in California showed that her absence from Massachusetts was not temporary. Although the trial court found that California did not have home state jurisdiction either, the court concluded that it had jurisdiction under UCCJEA because both A.K. and Father had a significant connection to California. The trial court also granted Mother four hours of daily visitation, but imposed travel

4

restrictions and required A.K. to undergo thorough medical evaluations as well as a full custody evaluation.

### 3. The Evidentiary Hearing

In the summer of 2021, the trial court modified its temporary custody order to award joint legal and physical custody to Mother and Father and to give each equal time with A.K. The court also scheduled an evidentiary hearing regarding the child custody evaluation and a move-away request by Mother.

The evidentiary hearing was conducted over four days in late January and early February 2022. Father presented 17 witnesses, including both Mother and himself. Mother presented one witness: Dr. Regina Marshall, the custody evaluator appointed by the trial court, whose report recommended that Mother be awarded physical custody of A.K. and permitted to move with her to Massachusetts. On cross-examination, Father brought out that Mother had given Dr. Marshall videos of A.K. that were supposedly taken in Massachusetts before her arrival in California but in fact were taken months later in California, that Mother had not informed Dr. Marshall about her personal relationship with the midwife whom she presented as a collateral professional contact, and that Dr. Marshall was unaware that A.K.'s pre-school and pediatrician were considering banning Mother from their facilities. Father also presented expert testimony concluding that Dr. Marshall's evaluation of the psychological testing that she conducted may have been infected by implicit bias.

On the stand, Mother admitted her personal relationship with the midwife and that videos she had given Dr. Marshall were taken in California. Mother denied that she had applied for public assistance in California or intended to stay in California, but admitted that as late as February 24, 2021 she was contemplating buying a used car to avoid paying further rental fees.

On April 14, 2022, the trial court awarded Father temporary sole legal custody of A.K. In so doing, the court found that most of Mother's testimony was not credible and

was contradicted by documents or credible contrary testimony. The court also found that Mother was unlikely to cooperate with Father if awarded legal custody. Accordingly, in addition to granting Father legal custody, the court ordered that A.K. not be removed from California and that Mother have joint physical custody only if she stayed in California. The court also ordered both Father and Mother to undergo therapy and complete co-parenting courses. Finally, the court scheduled a review hearing, which eventually was set for September 22, 2022.

### 4. *Mother's Abduction of A.K.*

In the months leading up to the review hearing Mother was banned from A.K.'s preschool due to erratic behavior, and A.K's pediatrician considered doing the same. Mother also made repeated allegations of abuse by Father, all of which the police found unsubstantiated, and on one occasion she refused to exchange custody of A.K. based upon what she asserted were "doctor's orders." Consequently, on July 29, 2022, the trial court issued an order barring Mother from A.K.'s preschool and requiring custody exchanges to occur at the police department.

Finally, in mid-September 2022, approximately a week before the review hearing, Mother moved out of her residence in California and took A.K. to Massachusetts. Father obtained an emergency order in Massachusetts awarding him sole legal and physical custody, and in light of Mother's abduction and removal of A.K., the (California) trial court temporarily awarded Father sole legal and physical custody of A.K. and provided for visitation by Mother through phone, FaceTime, or Zoom.

### 5. *The Review Hearing and Final Custody Award*

In late January 2023, the trial court held another evidentiary hearing concerning custody. Both Father and Mother offered witnesses, submitted exhibits, and presented argument, and on February 23, 2023 the trial court entered a final order awarding permanent legal and physical custody to Father. In addition to once again finding that Mother's testimony was not credible, and that she had violated court orders by taking

6

A.K. out of California without court authorization or Father's consent, the court found that it was in A.K.'s best interests for Father to have sole legal and physical custody. However, the court provided for continued visitation by Mother by phone, Facetime, or Zoom.

### 6. *Appeal*

Mother has tried to appeal several times. In June 2022, Mother filed a notice of appeal from the April 2022 judgment awarding Father temporary sole legal custody of A.K., which was dismissed as premature. Another notice of appeal filed by Mother in October 2022 from the denial of a motion for reconsideration was also dismissed. Finally, on March 9, 2023, Mother filed a timely notice of appeal from the February 2023 order concerning permanent custody.

## II. DISCUSSION

### A. Jurisdiction

Mother argues that the trial court lacked subject matter jurisdiction over the custody of her daughter A.K. because A.K.'s home state was Massachusetts, where she was born and lived for 17 months before coming to California. We are not persuaded. As explained below, the trial court had sufficient grounds for finding that, by the time the proceedings below commenced, A.K. no longer had a home state and that the court had substantial connection jurisdiction under the UCCJEA.

### 1. *The UCCJEA*

The Legislature adopted the UCCJEA for the stated purpose, among other things, of "avoiding jurisdictional competition and conflict." (*Kumar v. Superior Court* (1982) 32 Cal.3d 689, 695.) The statute provides the exclusive method for determining subject matter jurisdiction in child custody cases (§ 3421, subd. (b)), and it gives jurisdictional priority to the home state of the child in question. (*Schneer v. Llaurdao* (2015) 242 Cal.App.4th 1276, 1287 (*Schneer*).)

7

Under the UCCJEA, California courts have jurisdiction to make an initial child custody determination if California is or was the home state of a child. Specifically, California courts have jurisdiction if California was the child's "home state" on the date that the custody proceedings commenced. (§ 3421, subd. (a)(1).) California courts also have jurisdiction if California was the child's "home state" within six months before the proceeding commenced, and the child is absent from the state, but a parent continues to live in the state. (*Ibid*.) "Home state" is defined to be "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." (§ 3402, subd. (g).) Moreover, if a child is only temporarily absent from a state, the child is considered present in that state during his or her temporary absence. (*Ibid*. ["A period of temporary absence of any of the mentioned persons is part of the period."].)

If California does not have home state jurisdiction, it may have another type of jurisdiction. Most pertinently, where no other state has or exercises home state jurisdiction, California courts may exercise substantial connection jurisdiction. (§ 3421, subd. (a)(2).) Substantial connection jurisdiction may be exercised if no other state has home state jurisdiction under the UCCJEA or if a court with home state jurisdiction declines to exercise it because California provides a more appropriate forum. (§ 3421, subd. (a)(2).) However, to exercise substantial connection jurisdiction, two additional conditions must be satisfied: (1) the child and at least one parent must have "a significant connection with this state other than mere physical presence," and (2) there must be "[s]ubstantial evidence" in California "concerning the child's care, protection, training, and personal relationships." (§ 3421, subds. (a)(2)(A), (B).) California courts also may exercise jurisdiction over a child where no courts in other states have or are willing to exercise either home state or significant connection jurisdiction. (§ 3421, subds. (a)(3), (4).)

If a court has jurisdiction to conduct an initial child custody determination under the UCCJEA, it generally retains exclusive, continuing jurisdiction over child custody. (§ 3422, subd. (a).)

### 2. Analysis

The trial court determined that it had significant connection jurisdiction over A.K. because neither California nor Massachusetts had home state jurisdiction over A.K., and both A.K. and Father have a substantial connection to California. Mother argues that the trial court erred, primarily on the ground that Massachusetts was A.K.'s home state. As explained below, we uphold the trial court's determination because its finding that A.K. had no home state under the UCCJEA is supported by substantial evidence and the record supports the conclusion that the other requirements for significant connection jurisdiction were satisfied.

The trial court's findings concerning A.K.'s home state and significant connection jurisdiction are reviewable under the substantial evidence standard. (See *Schneer*, *supra*, 242 Cal.App.4th at pp. 1283-1286.) Mother argues that these findings are subject to de novo review because they concern subject matter jurisdiction and, in any event, the relevant facts are "largely undisputed." In fact, the most important fact concerning A.K.'s home state—whether Mother intended to return to Massachusetts after staying in California for three months—was disputed. In addition, while some decisions have suggested that factual findings concerning UCCJEA subject matter jurisdiction are reviewed de novo (*Schneer*, *supra*, 242 Cal.App.4th at pp. 1284-1285), the better reasoned and more widely established view is that " 'when the facts are contested, a trial court's jurisdictional finding under the UCCJEA is reviewed under the deferential substantial evidence standard.' " (*A.H. v. Superior Court* (2023) 89 Cal.App.5th 504, 517, quoting *Schneer*, *supra*, at p. 1287; see also Eisenberg et al*.,* Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:130.3, p. 207 ["the more recent

9

weight of authority is that when the facts are contested, appellate review is governed by the substantial evidence standard"].)

Under the substantial evidence standard, reviewing courts do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640 (*Caden*).) Instead, under the substantial evidence standard, "the appellate court's power begins and ends with a determination of whether there is any substantial evidence" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 (*Schmidt*))—that is, " ' "evidence that is reasonable, credible, and of solid value." ' " (*People v. Ramirez* (2022) 13 Cal.5th 997, 1197.) In determining whether a finding is supported by substantial evidence, appellate courts review the record "in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in favor of the family court's findings." (*Schneer*, *supra*, 242 Cal.App.4th at pp. 1286-1287.)

Substantial evidence supports the trial court's findings concerning jurisdiction. As noted above, the UCCJEA defines "[h]ome state" to mean "the state in which a child lived with a parent . . . for at least six consecutive months" before commencement of a child custody proceeding. (§ 3402, subd. (g).) Here, undisputed evidence showed that, when Father filed this suit on February 16, 2021, A.K. had not been in Massachusetts for the preceding six consecutive months. To the contrary, A.K. arrived in California on December 1, 2020 and lived in the state for ten weeks before Father commenced this suit on February 16, 2021.

It is true that under the UCCJEA children are deemed to remain in their home state during any "temporary absence" (§ 3402, subd. (g)) and that Mother asserted that her stay in California was a mere "vacation," "extended winter recess," or "holiday visit" intended to introduce A.K. to her Father. (Boldface omitted.) However, the trial court had substantial grounds for rejecting these assertions. First, by the time Mother was served with temporary emergency orders on February 25, 2021, having arrived on

December 1, 2020, she had been living in California for nearly three months—far longer than a typical vacation, holiday visit, or winter recess, and much longer than needed to introduce A.K. to Father. In addition, although Mother asserted that she and A.K. "were originally set to go home to Massachusetts" in February, she had no return ticket or other concrete plans for such return; to the contrary, in her declaration, she stated that she had invitations to visit friends and family "in Florida, Puerto Rico, Hawaii, etc. before returning home." In light of this evidence, the trial court had substantial grounds to doubt that Mother was in California on just a vacation or holiday visit.

In addition, there was evidence that Mother intended to stay in California indefinitely. According to a declaration from Father, Mother not only filed for child support in California; she also had applied for public assistance and had received a California electronic banking transfer card and monetary assistance. In response, Mother admitted that she had applied for California child support and did not deny that she had applied for public assistance. Public assistance is generally limited to state residents (Welf. & Inst. Code, § 17100; see also 51 Cal.Jur.3d (2025) Public Aid & Welfare, § 48, p. 779, fn. omitted ["Generally, a person may not be granted indigent aid unless that person is a resident of this state."].) Consequently, it is reasonable to infer from Mother's application for public assistance in California, that she had become a resident of the state. (*In re S.W.* (2007) 148 Cal.App.4th 1501, 1509.)

In short, based on the evidence in the record, the trial court reasonably found that Mother's nearly three-month stay in California from December 2020 through February 2021 was not temporary, that therefore A.K. did not live in Massachusetts for the six consecutive months prior to the commencement of this action, and that Massachusetts was not A.K.'s home state for purposes of the UCCJEA. While the record could support a contrary ruling, as noted above, appellate courts do not reweigh the evidence. (*Caden*, *supra*, 11 Cal.5th at p. 620.) Instead, our authority to review the trial court's factual

11

findings "begins and ends with a determination of whether there is any substantial evidence." (*Schmidt*, *supra*, 44 Cal.App.5th at p. 582.)

Mother denies that the record proved that A.K. had a significant connection to California. However, A.K. was only 17 months old when she arrived in California, and, as the trial court observed, the ensuing three months that she spent in the state amounted to approximately 15 percent of her life. Mother fails to offer any argument or authority explaining why this evidence is insufficient to establish a substantial connection. We therefore treat this argument as forfeited: As the Supreme Court has noted, " '[e]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793; see also *In re A.C.* (2017) 13 Cal.App.5th 661, 672 [" 'When an appellant fails to raise a point, or assert it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' "].) Mother has similarly forfeited her objections to the trial court's finding that there was substantial evidence in California concerning A.K.'s care, protection, and personal relationships.

In her reply brief, Mother raises several additional objections to the trial court's jurisdictional determination. Among things, she contends that the UCCJEA requires a child to have lived in a state for at least six consecutive months prior to any custody proceedings being brought and that California was required to defer to Massachusetts's "stronger connection" to A.K. In fact, as noted above, while the UCCJEA defines "[h]ome state" to be where a child has lived for six consecutive months before commencement of suit (§ 3402, subd. (g)), and gives the child's home state jurisdictional priority (§ 3421, subd. (a)(1)), it provides for significant connection jurisdiction where there is no home state jurisdiction (§ 3421, subd. (a)(2).) Moreover, appellants are generally not permitted to assert arguments in reply briefs that they have not raised in their opening briefs and given respondents a chance to address. (See, e.g., *People v.*

12

*Tully* (2012) 54 Cal.4th 952, 1075 (*Tully*) ["It is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party."]; see also *United Grand Corp v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 (*United Grand*) [" 'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issues deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.' "].)

We therefore conclude that the trial court properly determined that it had subject matter jurisdiction under the UCCJEA.  In light of this conclusion, we decline to reach Mother's contention that the trial court erred in exercising temporary emergency jurisdiction over A.K.

## B. Due Process

In addition to challenging the trial court's jurisdiction over A.K.'s custody, Mother argues that the court deprived her of due process by removing A.K. from her custody without a fair hearing.  Because there is no dispute concerning the procedures employed below, we review this argument de novo.  (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944.)  We conclude that due process was satisfied.  After granting Father temporary physical custody in an emergency order, the trial court promptly scheduled a hearing at which Mother was able to submit evidence and present arguments, and later the court conducted two evidentiary hearings with live witnesses before awarding Father permanent custody.

Both the California Constitution and the federal Constitution guarantee that individuals will not be deprived of life, liberty, or property without due process of law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)  As parents have a "fundamental liberty interest . . . in the care, custody, and management of their children," they are entitled to due process in judicial proceedings affecting child custody.  (*Santosky v. Kramer* (1982) 455 U.S. 745, 753.)  Accordingly, in custody proceedings, parents are

13

entitled to notice and a meaningful opportunity to be heard. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) However, due process is a flexible concept, and "the precise dictates of due process . . . vary according to context." (*Ibid*.) Consequently, in determining what due process requires in a particular context, California courts examine three factors identified by federal law—"the private interest affected, the risk of erroneous deprivation, and the government interest"—and a fourth factor recognized by the California Supreme Court: " ' "the dignitary interest in informing individuals of the nature, grounds, and consequences" ' " of an action. (*Id*. at p. 213; see also *Mathews v. Eldridge* 1976) 424 U.S. 319, 335 [discussing federal law].)

The temporary emergency order issued by the trial court on February 23, 2021 satisfied due process. Where a child's health or safety is in danger, or there is a risk that a child will be removed from a jurisdiction, the government has a strong interest in immediately protecting the child and maintaining the status quo. Consequently, in the emergency context, due process permits courts to issue a temporary custody order based on the ex parte application of the non-custodial parent so long as the custodial parent is given notice and promptly afforded a hearing in which to challenge the order. (See, e.g., *Miller v. City of Philadelphia* (1991) 174 F.3d 368, 372-374; see also *Lossman v. Pekarske* (7th Cir. 1983) 707 F.2d 288, 291 ["When a child's safety is threatened, that is justification enough for action first and hearing afterward."].) That is exactly what happened here. On February 23, 2021, after Father submitted an ex parte request for an emergency order due to the imminent danger that A.K. would be harmed or removed from California, the trial court issued an emergency order granting Father temporary physical custody of A.K., that order was served on Mother, and a hearing on temporary custody was scheduled. Thus, the trial court's emergency order satisfied due process.

The subsequent hearing concerning temporary custody also satisfied due process. Prior to the hearing, Mother submitted briefing and evidence (a declaration with six

14

exhibits attached).  In addition, on March 18, 2021, a hearing was held at which Mother's counsel appeared and argued.  Mother objects that there was no "full [and] fair evidentiary hearing," presumably on the ground that no live witnesses were presented.  However, Mother failed to file a witness list before the hearing, as required by the Family Law Code (§ 217, subd. (c) ["A party seeking to present live testimony from witnesses other than the parties shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony."]), and there is no indication in the record that she objected to the lack of live testimony in the trial court.  As a consequence, Mother forfeited any right that she may have had to present live witnesses at the temporary custody hearing.  (*Segal v. Fishbein* (2023) 89 Cal.App.5th 692, 709; see also *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1127 [Under the Family Code, "the right to live testimony may be forfeited" where parties decide to rely solely on declarations].)  We also note that Mother was able to present live testimony at the evidentiary hearing on permanent custody in January and February 2022 as well as the evidentiary hearing held in January 2023.

In her reply brief, Mother objects that the trial court did not find that she was an unfit parent and therefore should not have terminated her parental rights or assumed her parental responsibility for making decisions concerning the care, custody, and control of children.  However, custody hearings do not terminate parental rights or determine how they must be exercised.  (See *Dennis O. v. Stephanie O.* (Alaska 2017) 393 P.3d 401, 408 ["custody hearings do not threaten termination of parental rights"].)  Instead, they determine how these rights will be divided between parents.  Moreover, as noted above, absent a good reason for failing to do so, points not raised in an appellant's opening brief are not entertained.  (*Tully*, *supra*, 54 Cal.4th at p. 1075; *United Grand*, *supra*, 36 Cal.App.5th at p. 158.)  As Mother did not object to the absence of findings concerning fitness in her opening brief or offer a good reason for not doing do so, we deem this argument forfeited.  Similarly, as Mother did not make any argument concerning forum

15

non conveniens in her opening brief or offer a good reason for not doing so, we deem the forum non conveniens in her reply brief forfeited.

## C. Additional Arguments

Mother asserts a number of additional arguments, which are addressed below.

### 1. Full Faith & Credit

Mother asserts that the trial court's orders violate the Full Faith and Credit Clause in the federal Constitution because the trial court did not believe that Massachusetts could be trusted to enforce Father's parental rights. We reject this argument for several reasons.

*First*, Mother failed to raise this argument in the trial court, and " ' "[a]s a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . ." ' " (*Hewlett-Packard Co. v. Oracle Corp*. (2021) 65 Cal.App.5th 506, 548 (*Hewlett-Packard*); see also *Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 (*Sander*) [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' "].)

*Second*, Mother fails to cite any evidence supporting her assertion that the trial court did not trust Massachusetts to enforce Father's parental rights. Such conclusory assertions are inadequate. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Consequently, a factual assertion may be deemed forfeited where it is not supported by any citation to the record—especially where, as here, it appears to have no support. (*WFG National Title Insurance Company v. Wells Fargo Bank* (2020) 51 Cal.App.5th 881, 894 ["we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record"]; see also *Helm v. City of Los Angeles* (2024) 101 Cal.App.5th 1219, 1228, fn. 5

["It is not our role to scour the record to find evidence to support [the appellant's] contention . . . ."].)

*Third*, the Full Faith and Credit Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." (U.S. Const., art. IV, § 1.) Mother does not point to any public act, record, or judicial proceeding in Massachusetts that the trial court failed to honor. Indeed, the only Massachusetts action relevant to the proceedings in the trial court appears to be an emergency order issued after Mother abducted A.K. to Massachusetts, granting Father sole legal and physical custody, which is perfectly consistent with the trial court orders here.

### 2. Abandonment

Mother also argues that Father's parental rights should be deemed terminated because he abandoned A.K. before she was born and did not even attempt to exercise any parental rights until Mother brought her to California 17 months later. Although abandonment is a ground for petitioning to terminate parental rights (§ 7822, subd. (a)(2) [permitting a petition for termination based on abandonment for six months or more]), Mother does not point to any evidence of such a petition, and she did not argue in the trial court that Father's rights were terminated due to abandonment. Indeed, the only references to "abandonment" in the clerk's transcript are Mother's assertions concerning A.K.'s "fear of abandonment" by Mother and Mother's notice of abandonment of appeal. Consequently, this argument has been forfeited. (*Hewlett-Packard*, *supra*, 65 Cal.App.5th at p. 548; *Sander*, *supra*, 26 Cal.App.4th at p. 670.)

Mother also objects that the trial court's final custody order did not provide for in-person visitation and failed to set a schedule for visitation by phone, FaceTime, or Zoom. Although Mother asserts that this provision violates her constitutional rights under *Washington v. Glucksberg* (1997) 521 U.S. 702, she fails to explain how. That is inadequate. Where a party cites a case without meaningful analysis, the presumption of

17

correctness controls, and the argument is forfeited. (See, e.g., *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*) ["citing causes without any discussion of their application to the present case results in forfeiture"].)

    3. <u>Best Interests</u>

Mother argues in her reply brief that there is substantial evidence that Father is unfit and that the trial court ignored the best interests of A.K. in awarding Father custody. Among other things, Mother accuses Father of drug use, child abuse and neglect, evidence tampering, and attempting to exercise coercive control through manipulation of the legal system. Although Mother made some of these accusations in her opening brief, she failed to challenge the sufficiency of the evidence supporting the trial court's best interests determination in that brief and therefore forfeited the substantial evidence challenge in her reply. (*Tully*, *supra*, 54 Cal.4th at p. 1075; *United Grand*, *supra*, 36 Cal.App.5th at p. 158.) Further, the trial court articulated in writing its reasons for finding that it was in A.K.'s best interests to grant Father custody as required where allegations of alcohol or her substance abuse have been made. (§ 3011, subd. (a)(5)(A).)

We also note that Mother failed to satisfy the burden borne by appellants challenging the sufficiency of the evidence supporting a finding. " 'It is well-established that a reviewing court starts with the presumption that the record contains evidence to support every finding of fact' " and therefore a party challenging the sufficiency of the evidence on appeal is " 'to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*.' [Citations]." (*Foreman & Clark Corp v. Fallon* (1971) 3 Cal.3d 875, 881.) Mother has not satisfied this requirement. For example, notably absent from her briefs is any mention of the fact that she kidnapped A.K. and took her to Massachusetts in September 2022, and while she includes over twenty pages of quotations from Dr. Marshall's custody evaluation report, she fails to reference any of the evidence undermining that report, such as Mother's admission that the videos of A.K.

18

that Dr. Marshall believed Mother took in Massachusetts before coming to California were actually taken afterwards.

4.    Remaining Objections

Mother makes several additional objections in her reply brief. For example, she asserts that the trial court's orders violated A.K.'s right to "maintain her primary bond" with Mother and A.K.'s First Amendment right to association as well as being vague and overbroad. These arguments have been forfeited because they were raised for the first time on reply (*Tully, supra*, 54 Cal.4th at p. 1075; *United Grand, supra*, 36 Cal.App.5th at p. 158) and because they are unsupported by any analysis of the cases that Mother cites (*Allen, supra,* 234 Cal.App.4th at p. 52). Mother also asserts that there are "brand new . . . circumstances not seen or heard by the Courts" warranting intervention and points as well to a statement purportedly made by the trial court on July 22, 2021. We cannot consider these factual assertions on appeal because, as a general rule, " '[f]actual matters that are not part of the appellate record will not be considered on appeal . . . .' " (*In re Bailey* (2022) 76 Cal.App.5th 837, 860.)

### III. DISPOSITION

The judgment is affirmed.

_____
BROMBERG, J.

WE CONCUR:

_____
DANNER, ACTING P. J.

_____
WILSON, J.

*Katkin v. Komorebi*
H050891